## FOSTER v. BOURGEOIS et al. (No. 6594.)

(Court of Civil Appeals of Texas. May 9, 1923. Rehearing Denied June 6, 1923.)

1. **Exceptions, bill of ⬠41(1)—Filed too late after expiration of additional time allowed by court.**

Vernon Sayles' Ann. Civ. St. 1914, art. 2073 requiring bills of exceptions taken at a term of court continuing more than 8 weeks to be filed within 30 days after final judgment unless the court extends the time, is mandatory, and hence, where appellant filed his bills of exceptions after the 100 days allowed by the court, they were filed too late and could not be considered by the Court of Civil Appeals.

2. **Malicious prosecution ⬠71(3)—Evidence held sufficient to submit issue of malice.**

In an action for malicious prosecution, evidence that defendant had lavished thousands of dollars on plaintiff while she had illicit relations with him, but that after she left him and married he sought her personally and by detectives and had her imprisoned for a small sum,

held sufficient to submit the issue of malice, both express and implied.

3. **Appeal and error ⬠500(3)—Error cannot be predicated on refusal to sustain motion to strike evidence unless record shows motion was presented or acted on.**

Where the record did not show that a motion to strike evidence was presented or acted on by the trial court, error could not be predicated on failure to sustain the motion, especially where appellant himself testified to the same effect.

4. **Trial ⬠350(8)—Not error to refuse to submit to jury question admitted in pleading.**

Where, in an action for malicious prosecution, the gravamen of the action was the arrest of plaintiff in Louisiana charged with being a fugitive from justice based on arrest warrants issued in Texas, in view of the fact that the pleadings showed that plaintiff came voluntarily to Texas and had the charges set for hearing, it was not error for the court to refuse to submit the question whether she was arrested on complaints filed in Texas.

5. **Malicious prosecution ⬠64(2)—Evidence held sufficient to show malice and want of probable cause.**

In an action for malicious prosecution, evidence held sufficient to warrant finding that defendant caused criminal charges to be filed maliciously and without probable cause.

6. **Damages ⬠87(1)—"Exemplary damages" defined.**

The theory of "exemplary damages" involves a blending of the interests of society with those of the aggrieved individual, and such damages include not only compensation to the injured party, but punishment to the offender to deter him from any such proceeding in the future and as a proof of the jury's detestation of the act itself.

7. **Malicious prosecution ⬠69—$2,000 actual and $8,000 exemplary damages held not excessive.**

Though the ratio between $2,000 actual and $8,000 exemplary damages sought in an action for malicious prosecution would in most cases be excessive and show that the jury were actuated by passion or prejudice, where evidence showed that defendant a married man, had lavished his money on plaintiff while she had illicit relations with him, but that after she left him and married he sought her imprisonment for a few dollars, and that his motive in doing so was to force plaintiff to resume such relations, a verdict for $2,000 actual and $8,000 exemplary damages was not excessive.

On Motion for Rehearing.

8. **Exceptions, bill of ⬠39(1)—Period within which to file runs from date of "final judgment," and not from order overruling motion for new trial.**

Under Vernon Sayles' Ann. Civ. St. 1914, art. 2073, requiring bills of exceptions taken at a term of court continuing more than 8 weeks to be filed within 30 days after final judgment

unless the court extends the time, the time begins to run from the day the judgment was entered and not from the day when the motion for new trial was overruled; "final judgment" meaning the judgment proper and not the order overruling the motion for new trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

Appeal from District Court, McLennan County; Jas. P. Alexander, Judge.

Action by Mrs. Minnie L. Bourgeois and husband against W. M. Foster. Judgment for plaintiffs, and defendant appeals. Affirmed.

S. P. Ross, of Waco, for appellant.

Witt, Terrell & Witt, of Waco, for appellees.

BLAIR, J.   This suit was instituted by appellees, Mrs. Minnie Ludlow Bourgeois, joined pro forma by her husband, Albert Bourgeois, against the appellant, W. M. Foster, to recover damages for alleged malicious prosecution. The appellees alleged that on or about February 23, 1921, appellant caused a complaint to be filed in the justice court, precinct No. 1, McLennan county, Tex., charging the appellee Mrs. Minnie Ludlow Bourgeois with a felony, to wit, the offense of swindling over $50, and caused a warrant to be issued for her arrest; that appellant had himself appointed as a deputy sheriff of McLennan county, Tex., and proceeded with said warrant to New Orleans, La., where appellee Mrs. Minnie Ludlow Bourgeois was living with her husband, for the purpose of having her arrested by virtue of said warrant; and, based thereon, the said appellant caused to be filed in the proper court in New Orleans, La., a complaint charging said appellee, Mrs. Minnie Ludlow Bourgeois, with being a fugitive from justice, and based upon said last charge caused her arrest by the police authorities of New Orleans, La., on the 14th of March, 1921. That after her arrest she was compelled to give an appearance bond, which she did, and was later arraigned on said charge, and exonerated and discharged. That thereafter, on or about the 1st day of April, 1921, said appellant caused another complaint to be filed in the justice court, precinct No. 1, Dallas county, Tex., against the appellee Mrs. Minnie Ludlow Bourgeois, charging her with a felony, to wit, the offense of swindling of Foster of $100, and caused to be issued thereon a warrant of arrest for her, which he caused to be delivered to the officers in New Orleans, La., where appellee Mrs. Minnie Ludlow Bourgeois still lived with her husband, for the purpose of having her arrested again; and based upon said warrant, caused the proper authorities of New Orleans, La., to again charge her with being a fugitive from justice; and on or about the 15th of April, 1921,

253 S.W.—56

she was again arrested and confined in jail, in the city of New Orleans, La., for a considerable period of time. That thereafter she was permitted to execute an appearance bond, in the sum of $500, and released from custody of the officers, until she was finally arraigned on said charge, and was again exonerated and finally discharged. That thereafter appellee Mrs. Minnie Ludlow Bourgeois voluntarily came to Waco, Tex., and caused the case filed against her in the justice court there to be set down for a hearing. A subpœna was issued for appellant, whose name appeared on the back of said complaint, but he failed to appear, and the case was dismissed for want of prosecution. A like proceeding was had in the case filed against her in the Dallas justice court, and the appellant failing again to appear as a witness, the proceedings were likewise dismissed for want of prosecution.

Appellees alleged further that appellee Minnie Ludlow Bourgeois was not guilty of the offense of swindling as charged in the complaints filed in Waco and Dallas, Tex., by appellant, nor of being a fugitive from justice; and that said complaints were filed by appellant maliciously and without probable cause, and for the malicious and willful purpose of injuring her. That as a result thereof she was forced to employ attorneys, and incur other expenses in connection with her defense in said cases; and that her reputation was injured by the great newspaper publicity given the affair, and her feelings humiliated. That appellant knew she was not guilty at the time he filed the same; and by reason of said complaints, her arrest, etc., appellees had been damaged in the sum of $10,000 actual and $20,000 exemplary damages.

The appellant answered by general denial, and further alleged that in January, 1921, the appellee Mrs. Minnie Ludlow Bourgeois represented to him that she owed a doctor bill of $100 in the city of Dallas. That she had no means to pay same except to borrow the money from appellant. That upon said representation, appellant let said Minnie Ludlow Bourgeois have said sum of $100, when in truth and in fact the said Minnie Ludlow Bourgeois did not owe any doctor bill and had in her possession and control $5,000 in cash, and that said representations were made to this appellant to fraudulently deprive him of said $100. That about February 2, 1921, the said appellee, Mrs. Minnie Ludlow Bourgeois, then Minnie Ludlow, represented to appellant that she had certain diamonds which were pawned with the Provident Loan Company of Dallas, Tex. That said diamonds were about to be sold to pay the money which they secured. That she had no means or way of redeeming said diamonds except to borrow $75 from this appellant. That she represented to this appellant if he would advance her said $75 she

would immediately redeem said jewelry and would deliver same to him to hold as security for said sum. That appellant, relying upon said representations, gave her said sum of $75, but said representations of said appellee were false, in that she did not owe any obligation whatsoever at that time, to the Provident Loan Company, and said loan company was not threatening to sell her diamonds or any part thereof. That had she owed said obligation, she had plenty of means to pay same, and she had at that time, in her possession, and subject to her control, the sum of $5,000 cash. That appellant did not know of the falsity of said representations at the time he paid out said money, and that by reason of her false and fraudulent representations she had deprived him of said sums of money and defrauded him of same, and he prayed that appellee take nothing by her suit.

The case was tried before a jury upon special issues, and the jury found in substance:

That W. M. Foster procured, or caused, the complaint to be filed in the justice court of McLennan county, Tex., charging appellee with the offense of swindling.

That he did not have probable cause for believing said charges and said complaint to be true.

That he was actuated by malice in so doing.

That he caused the complaint in question to be filed in the justice court of Dallas county.

That he did not have probable cause for believing said charges and said complaint to be true.

That he was actuated by malice in filing said charges.

That the appellee suffered actual damages in the sum of $2,000.

That the appellee was entitled to exemplary damages in the sum of $8,000.

That before the complaint was filed in McLennan county, appellant did not submit a full statement of the facts and circumstances connected with the charge, to the county attorney of McLennan county, Tex.

That at the time the complaint was filed in Dallas, Sim Sheppard did not submit a full, fair, and correct statement to the county attorney of Dallas county, of the facts relative to said complaint.

Upon the findings of the jury, judgment was entered in favor of the appellee Mrs. Minnie Ludlow Bourgeois in the sum of $10,000, with interest from date of said judgment.

Appellant, W. M. Foster, then duly filed his motion for new trial, which said motion was, by the court, overruled. Appellant gave notice of appeal, perfected his appeal, and said cause is now before this court for revision upon errors assigned in the motion for a new trial.

The proof showed that appellant, then a traveling salesman and a married man of about 35 years of age, met appellee Mrs. Minnie Ludlow Bourgeois, then a single girl about 19 or 20 years of age, at San Antonio, Tex., where she lived with her father; her mother being dead; that they became infatuated with each other. From this infatuation, an illicit and immoral relationship began between them, which lasted for a period of 20 years, with only slight intermissions, when they apparently quarreled, or when appellee sought to break the relationship and obtain employment; but each time she was induced to come back by appellant, who insisted and tried to always impress upon her that he was doing a great favor to her. During this time appellant lavished upon her his wealth, expending, according to his testimony, approximately $3,000 annually for the last 15 years of their relationship. Appellant kept appellee at San Antonio, Waco, Beaumont, Dallas, and other places in Texas, a part of the time under the guise of having her employed as a saleswoman for various business enterprises of appellant, and a part of the time she traveled with him. When separated, they corresponded in the most endearing way, and were in almost daily connection by telephone or wire.

Their relationship became known to appellant's family, who apparently gave them much trouble in their degrading enterprise. Clandestine meetings and trips were made as a result of this discovery, in order that secrecy of such might be kept from appellant's family. Appellant, under the guise of employing appellee as a saleswoman, sent her to Canada, in the interest of one of his business enterprises, where he visited her. She apparently left appellant for a short period of time on one occasion, and obtained employment in Birmingham, Alabama, but under the persuasion of appellant she returned and resumed their old relations. During the last two years or more of their relationship, appellant kept appellee at a hotel, in Dallas, paying her room rent and expenses. They stored their furniture, and many quarrels and differences arose as to the payment of expenses. Appellee during these later years became ill, and needed medical attention, which was a source of difference as to the payment of these bills. During the time she lived at the Dallas hotel, she received a legacy of $5,000 from a man who lived and died at the hotel in which she was living. This she accepted, after conferring with appellant as to what she should do about it. Storage charges on her furniture, which had been stored since she had been living at the hotel, became due, and she had appellant pay the same to keep it from being sold. Appellant contended that he did not know at this time that she had received the $5,000 legacy; and that she also obtained from him $100 to pay medical bills, and $75 to pay her diamonds out of the pawn shop,

and $25 room rent, under the pretense that she had no money. These matters were found adversely to appellant by the jury.

Appellee decided to break off her relationship with appellant, and after obtaining a release of her furniture, by appellant paying the storage, she took it and moved to New Orleans, La., where she was soon married to Albert Bourgeois. She did not inform appellant of her whereabouts, nor of her intention to marry. Appellant, immediately after finding that she had left Dallas, employed detectives and commenced a search for appellee. He made trips to Mississippi, where he thought he had located her, which proved futile. He made several trips to New Orleans, La., and finally located appellee through the Leon Detective Agency of that place, whom he had employed for this purpose. Appellee was living and moving in good society in New Orleans, La., and her voluntary resolve to lead a different life seemed to be highly successful. So far as the record shows, she was happy and doing well, living in a respectable portion of the city of New Orleans, with her husband. With appellant it was different. He apparently became angry at her and resented her running away from him. He exerted his own best energies, as well as those of the detectives whom he employed, to locate appellee. Upon being successful, he obtained. one I. Mack Wood, of Waco, to file a complaint against appellee Mrs. Minnie Ludlow Bourgeois for swindling him out of the sum of more than $50; had himself appointed a deputy sheriff of McLennan county, Tex., and taking the warrant issued upon said complaint, he proceeded to New Orleans, La., where he called upon appellee and demanded payment of certain sums of money, and if she did not pay it, stated, that he had papers to take her back with him. She refused to pay or go with him; and he then caused to be filed in the proper court of New Orleans, La., a complaint, based upon the arrest warrant which he had obtained at Waco, Tex., charging appellee with being a fugitive from justice, and caused her arrest thereon. Appellee made bond for her appearance, and was released. Later she was arraigned and tried on this charge, and was found not guilty and discharged. A few days thereafter, appellant caused one Sim Sheppard to file a complaint in the justice court, at Dallas, in Dallas county, Tex., against the appellee, again charging her with a felony; that is, with the offense of having swindled him of $100. Based upon this complaint, appellant caused to be issued another arrest warrant for appellee, and taking the same he again proceeded to New Orleans, La., and again caused a complaint, based upon said arrest warrant, to be filed against appellee, again charging her with being a fugitive from justice, and caused her arrest for such offense. Appellee was not able to readily make

bond, and was placed in jail for some five or six hours, with numerous other prisoners. She later executed bond, in the sum of $500, and was released. Still later she was arraigned and tried on said charge, and was found not guilty, and finally discharged.

Appellee then voluntarily came to Waco, Tex., and had the case filed against her in the justice court set down for a hearing. She caused a subpœna to be served upon appellant, whose name was on the back of the complaint as a witness, but he failed to appear, and the cause was dismissed for want of prosecution. A like proceeding was had and a like disposition was made of the case appellant caused to be filed against her at Dallas, Tex.

Appellant knew at the time he filed said complaints at Waco and Dallas, Tex., that the charges were not true. That he caused the same to be filed maliciously and without probable cause, and for the malicious and willful purpose of injuring the appellee Mrs. Minnie Ludlow Bourgeois.

The jury found that the appellee suffered actual damages in the sum of $2,000, and exemplary damages in the sum of $8,000. We find their verdict is supported by the evidence.

## Opinion.

[1] We will first consider appellees' objection to the court's considering any of appellant's bills of exception and the assignments of error based thereon, because not filed within the time required by article 2073, Vernon's Sayles' Civil Statutes 1914, or the order of the court extending the time of filing as based upon said article. We are of the opinion that the objection is well taken. The record shows that the case was tried at the October term, 1921, of the district court of McLennan county, which convened on October 3, and adjourned December 24, 1921, thereby continuing in session more than eight weeks. The above article of our statute requires that bills of exception taken at a term of court continuing more than 8 weeks be filed within 30 days after final judgment, unless the court shall by an order entered of record extend the time for filing such bills of exception. The final judgment was entered in this cause on the 5th of November, 1921. The court in overruling appellant's motion for a new trial allowed 60 days in addition to the time allowed by law within which to file his bills of exception. This 60 days, in addition to the 30 days allowed by law, gave appellant 90 days in which to file his bills of exception. Thereafter, on March 21, 1922, and after the 90 days had expired, appellant was allowed 10 days in addition to that allowed theretofore and by law, making a total of 100 days' allowance from the date of final judgment, which was November 5, 1921, within which appellant had to file his bills of exception, or until on or before February 15, 1922. The

bills of exception were not filed until April 1, 1922, which was after the 100 days allowed by the court; and were filed too late for our consideration. This statute is mandatory. Counsel in appealing cases should carefully observe the rules and law entitling them to relief or appeal. The efficiency of this court, in disposing of its docket, depends largely upon counsel filing their papers necessary to an appeal in a due and timely manner as required by law. See article 2073, Vernon's Sayles' Civil Statutes 1914, 1918, 1922, and cases cited thereunder; Couturie v. Crespi, 103 Tex. 554, 131 S. W. 403; Loeb v. T. & N. O. Ry. Co. (Tex. Civ. App.) 186 S. W. 378; Pearce v. Supreme Lodge (Tex. Civ. App.) 190 S. W. 1156; Unknown Heirs v. Robbins (Tex. Civ. App.) 152 S. W. 210; Byrne v. Tex. Lumber Co. (Tex. Civ. App.) 198 S. W. 600; Camp v. Gourley (Tex. Civ. App.) 201 S. W. 671; Martin v. Martin (Tex. Civ. App.) 229 S. W. 695; City of Aransas Pass v. Eureka Hose Co. (Tex. Civ. App.) 227 S. W. 330; Alamo Iron Works v. Prado (Tex. Civ. App.) 220 S. W. 283; Allen v. Berkmier et al., 216 S. W. 647; St. Louis Ry. Co. v. Vick (Tex. Civ. App.) 210 S. W. 247; Kennedy v. Kennedy (Tex. Civ. App.) 210 S. W. 581; Billingsley v. Tex. Midland Ry. Co. (Tex. Civ. App.) 208 S. W. 408. See Sheppard's Texas Citator, latest edition, on this article for numerous recent cases.

Having sustained appellees' exception as to the time of filing the bills of exception, we cannot consider the assignments of error or the propositions of law based thereon. Our consideration of this case will, therefore, be limited to only such propositions of law that do not relate to these bills or assignments of error based thereon.

[2] By his seventh proposition, appellant contends that the trial court erred in submitting the issue of malice on the part of the defendant to the jury, alleging that there was no evidence to sustain such issue. We do not sustain the proposition, as we are of the opinion that there was sufficient evidence to require the court to submit the issue and to support their findings thereon. The testimony shows that appellant stated that he was disgusted in appellee's running away like she did; that he sought her personally and by detectives, and harassed her in many ways, for the small sum of $200 or $300, when he had lavished thousands of dollars upon her theretofore, and is sufficient to submit the issue of malice, both express and implied, to the jury; and their findings thereon will not be disturbed.

[3] By his eighth proposition, appellant contends that the court erred in failing to sustain his motion to strike out certain evidence as to the arrest of appellee at New Orleans. The record does not disclose that the motion was presented or acted upon by the trial judge; hence it cannot be considered on appeal. Besides, appellant brought out the testimony that he had caused these cases upon which the arrest was based to be filed and later dismissed. We find him testifying as follows as to the filing of the complaints:

"At the time these complaints were made out here in Waco and in Dallas, or at New Orleans either, or in connection with any of them, I was not in any way actuated by any malice or ill feeling towards the plaintiff. I was not mad at her, only I felt that they had gotten the money from me under false pretenses and ought to be prosecuted. That was the only reason that I had for filing these complaints."

He then testified that he had them dismissed by his order and that of his attorney.

[4] Appellant's ninth proposition is not well taken. The arrest in New Orleans, La., charged with being a fugitive from justice, based upon the arrest warrants issued at Waco and Dallas, upon the complaints filed by appellant charging appellee with the offense of swindling, constituted the gravamen of this action, and it was therefore not error for the court to refuse to submit the question as to whether or not she was arrested upon the complaints so filed at Waco and Dallas, Tex. It was also admitted, by both the pleadings and evidence, that appellee was not arrested on the charges at Waco and Dallas, Tex., but that she came voluntarily and had the same set for a hearing; hence no necessity of submitting to the jury an admitted fact.

[5] Appellant's tenth, twelfth, and fourteenth propositions are not sustained. In these he complained that the verdict of the jury that he caused to be filed against appellee the charges at New Orleans was unsupported and unwarranted by the evidence; or that he authorized any one to file the same, and as there was no testimony showing malice upon the part of the appellant herein, no recovery of either actual or exemplary damages could be had. In all of these matters, the jury found against appellant's contention, and we find their verdict is supported by sufficient evidence. The evidence shows that all the complaints were filed or caused to be filed by appellant, that he filed or caused them to be filed, without probable cause, from which malice is presumed; his acts and conduct show him to be actuated by malice of the most morbid character. His admissions of employing the New Orleans detective agency, connected with his presence and acts at the time of these arrests, form a circumstance so strong that appellant was the moving cause for all the complaints and arrests that the jury were wholly justified in their findings herein.

[6, 7] Appellant's eleventh proposition is that the jury's verdict for $8,000 exemplary damages was excessive to such an extent to show that it was the result of passion, prejudice, or other improper conduct on their

part. Were this a case of ordinary dealings between litigants and their property, whereby one had maliciously and by the unlawful use of the writs of our courts secured the possession of property that did not rightfully belong to him, we would be inclined to the view of appellant. That is, we would think the ratio between $2,000 actual and $8,000 exemplary would be excessive, and tend to show that the jury were probably actuated by passion, prejudice, or improper motives in so assessing it. But in this case we have a very different state of facts, in which every claim to exemplary damages as defined can be claimed. Bouvier's Law Dictionary defines "exemplary damages" as:

"The indemnity recoverable by a person who has sustained an injury, the sum claimed as such indemnity by plaintiff in his declaration; and the term includes not only compensatory but also exemplary or punitive or vindictive and double or treble damages."

As compensatory damages, it involves that element of recovery incapable of pecuniary estimate; hence, of necessity, peculiarly within the discretion of the jury. As a punishment, exemplary damages are designated not only as a satisfaction to the injured person, but likewise as a punishment for the guilty, to deter from any such proceeding in the future, and as a proof of the detestation of the jury to the act itself. The theory of exemplary, punitive, or vindictive damages, or as they are sometimes called "smart money," involves a blending of the interests of society in general with those of the aggrieved individual in particular. According to most authorities, such damages are awarded by way of punishment to the offender, and as a warning to others; although by other authorities they are awarded by way of example and not by way of punishment. Words & Phrases, vol. 3, First Series, pp. 1814, 1815; vol. 1, Second Series, pp. 1190–1192; 17 C. J. pp. 968, 969, and cases cited.

The jury may not have believed appellant's contention that he instituted the proceedings against appellee for the sole purpose of obtaining a redress of the law from one who had infringed upon it. His acts belie his purpose, for he sought merely to collect a debt by filing a charge against appellee, which he told her would be dismissed, if she paid him certain sums of money and delivered to him certain property; and then by using the criminal process which he obtained, sought to enforce the collection of his debt. This view and the fact that appellant had lavished upon her his wealth for many years do not coincide, for now, after she had refused to longer continue in their immoral relationship, he seeks her imprisonment for a few paltry dollars.

Then, too, the jury had a right to take into consideration, in assessing exemplary damages, and it was their duty to do so under the evidence, that the desire on the part of appellant was not to see that the infraction of the law by appellee was rectified, but that he was actuated by motives more sinister, in that he wished appellee to return to him and their old relationship. This is evidenced by the letter written by appellant after he had found appellee in New Orleans, and after he knew of her marriage. In this letter he chided her as an ingrate, and stated that she should have been happy in the relationship theretofore existing between them; and he made certain indefinite promises if she would satisfactorily settle all their differences. Appellee had the right to flee the old life of sin and seek a better if she could. Appellant was married, and could offer her no other life than the one they were living.

It the jury should have taken this view, then it was their right to consider the effect of such course of conduct upon society, and give redress therefor. If there was ever a case in which society had the right to lend its aid in support of the individual, it is in this case. The double life being led by appellant, in his decent relationship with his family, and the indecent and immoral relationship with appellee, deserved the most severe condemnation of society, for such strikes at the very vitals of decency and organized society. Then, too, the jury had the right, under all the facts and circumstances of this case, to assess such exemplary damages as might show their detestation of the course of conduct of appellant, in his effort to continue this unholy relation with appellee by coercion, by the use of process issued by our courts, based upon his false statements and affidavits.

Then, too, the jury might have made the honest effort to punish appellant for his misconduct, and to warn him and those who might come after him that such methods and conduct would not be tolerated in law or by society. We therefore must conclude that under all the facts and circumstances of this case, we do not find the jury's verdict for exemplary damages to be excessive.

Appellant's other propositions of law cannot be considered by us, because the bills of exception upon which they are based were not filed within the time required by law.

We are of the opinion that the case should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

KEY, C. J. [8] Appellant earnestly insists, in his motion for new trial, that this court erred in sustaining appellees' objection to the consideration of his bills of exception, and the assignments of error based thereon, because the same were not filed within the time allowed by article 2073, Vernon's Sayles' Civil Statutes 1914, nor within the extended

time allowed by the trial judge, based upon said article.

In support of his contention, appellant cites, for the first time, the case of G., C. & S. F. Ry. Co. v. Felts, 60 Tex. Civ. App. 471, 128 S. W. 155, in which it was held by this court that the time for filing bills of exception under the provisions of this article should be computed from the date of the order overruling the motion for a new trial, and not the date of the entry of the judgment proper in the case. That case is contrary to our holding in the case at bar, and is hereby overruled. That portion of article 2073 involved in this appeal is as follows:

"Provided, if the term of said court may * * * continue more than eight weeks, said statement of facts and bills of exception shall be filed within thirty days after final judgment shall be rendered, unless the court shall by order entered of record in said cause extend the time for filing such statement [of facts] and bills of exception."

It is further provided in this article that the extension of time which may be allowed by the trial judge shall not exceed the time for filing the record, etc., in the appellate court. The question raised, therefor, is: When does a judgment become final; that is, does a judgment become final on the date of the entry of the judgment proper, or on the date of the order overruling the motion for a new trial?

Words & Phrases, in an exhaustive research of many cases, defines a judgment or decree, "to be final within the meaning of that term as used in the acts of Congress giving the Supreme Court jurisdiction of appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance by the Supreme Court, the court below would have nothing to do but to execute the judgment or decree it had already rendered." This same authority further defines a final judgment or decree as one which makes an end of the case, and decides the whole matter in controversy, costs and all, leaving nothing further for the court to do. Words & Phrases, vol. 3, pp. 2774 and 2775.

In construing when a judgment became final, the Supreme Court, speaking through Chief Justice Gaines, in the case of Cooper v. Yoakum, 91 Tex. 391, 43 S. W. 871, held that the term "final judgment," as used in a similar article of the statute, was the rendition of the main or proper judgment in the case, and not the date upon which the minutes showed the motion for a new trial was overruled. In discussing the case, the court used the following language:

"We are of opinion that the first question certified should be answered in the affirmative. Section 142 of the Act of May 13, 1846, 'To regulate proceedings in the district court,' provided that 'no writ of error shall be granted after the expiration of two years from the rendition of the judgment. * * *' In Waterhouse v. Love, 23 Texas, 560, this statute was construed and it was there held that under it the writ of error should have been sued out within two years from the time at which the main judgment was rendered. In this opinion, speaking of the provision quoted above, the court say: 'The language is too plain to be mistaken. It bars the remedy at the expiration of two years from the "rendition of the judgment." The rendition of the judgment is an independent fact, distinct from the adjournment of the court, and from other proceedings at the term, and in the same case; and it is from the happening of this fact, that the two years are to be computed. This is the plain meaning of the language of the statute.' "

The court further held, dealing with the same subject-matter, that—

"A previous section of the same act provides, in case of appeal, that the appeal bond shall be given 'within twenty days after the term of the court at which the judgment or decree was rendered,' showing that the Legislature had in mind the distinction between the date of the judgment and of the adjourment of the court. The language of the present statute, in so far as it affects the point before us, is not different in substance. It reads as follows: 'The writ of error may, in cases where the same is allowed, be sued out at any time within twelve months after the final judgment is rendered, and not thereafter.' * * * That the final judgment which is meant is the judgment proper in the case, and not the order overruling a motion for a new trial, is made manifest by the second preceding article of the Revised Statutes in relation to appeals. That article reads in part as follows: 'An appeal may, in cases where an appeal is allowed, be taken during the term of the court at which the final judgment in the cause is rendered, by the appellants giving notice of appeal in open court within two days after final judgment, or two days after judgment overruling a motion for new trial,' etc. * * * "It is quite clear that the Legislature did not intend to use the words 'final judgment' in one sense in article 1387, which fixes the time within which notice of appeal is to be given, and in a different sense in article 1389, which defines the date from which the twelve months are to be computed within which the writ of error is to be allowed. Besides, those words as used in the act of May 13, 1846, having been construed by this court, the Legislature in using the same words as applicable to the same subject-matter in article 1389 must be presumed to have intended to employ them in the same sense."

We are of the opinion, therefore, that the words "final judgment," as used in article 2073, mean the day on which the judgment proper was entered in the case, and not the day upon which the motion for new trial was overruled.

With the exception of the case of Ry. Co. v. Felts, supra, the Courts of Civil Appeals have universally followed the opinion by

Chief Justice Gaines, in the case of Cooper v. Yoakum, 91 Tex. 391, 43 S. W. 871, and that case must have been overlooked when the Felts Case was decided.

We are of the opinion that we correctly decided this case, in our former opinion, and the motion for rehearing is therefore overruled.

Overruled.