HOUSTON & TEXAS CENTRAL R'Y CO. V. SPENCER BAKER.

(Case No. 3499.)

1. FREEDMAN — MARRIAGE — RIGHT OF FATHER TO SUE.— An adult freedman, born of parents who were slaves in Georgia, was accidentally killed on the H. & T. Central Railroad in 1873. The father, who was still a resident of Georgia, sued the company for damages. *Held* that, in the absence of evidence showing that the laws of Georgia differ from those of Texas, the legal relation of father and son existed between the two, and the father was competent to sue as such.

2. EXEMPLARY DAMAGES — RIGHT OF FATHER TO.— In 1873 there could be no recovery of exemplary damages in such cases unless the homicide occurred through some willful act or omission; nor, where it so occurred, was the father one of the class of heirs who could recover exemplary damages.

APPEAL from Washington. Tried in 1877 before the Hon. E. B. Turner.

Spencer Baker, a freedman, and resident of Georgia, brought this suit against appellant to recover damages, May 10, 1873. Lee Baker, an adult freedman, who claimed to be the son of appellee, was in the employ of appellant as brakeman on a freight train, and on the night of February 13, 1873, while in the discharge of his duty as such, was killed. The alleged matters of fact constituting the negligence were, in substance, that the death was caused by a beam or scantling, carelessly fastened or suspended across the track over the bridge, by workmen of defendant, engaged in repairing or rebuilding the bridge, so low that a man of ordinary size, standing at the brakeman's post on top of a box car, could not pass under it in safety, and that Lee Baker, while so standing at his post, was brought into violent contact with the beam, and was knocked from the car and killed. It was further alleged that the accident was due in part to the reckless conduct of the engineer of the defendant's train, whose orders Lee Baker was bound to obey, in sounding the signal for setting the brakes immediately before entering on the bridge, and then rushing the train at an improper rate of speed across the bridge and under the beam, while Lee was at the brake in obedience to the orders of the engineer, whereby he was killed.

Lee Baker was an adult; his father was in indigent circumstances, and Lee occasionally sent him presents of money to help him along, not as a regular or uniform stipend, but spasmodically, at odd times, and in odd amounts.

The court charged the jury that under the proof the plaintiff had failed to show such a pecuniary interest in the life of Lee Baker as entitled him to recover any actual damages; but if, under other

charges, they should find that his death was caused by the gross negligence of the defendant and its employees, they might find for the plaintiff exemplary damages; and the jury returned a verdict for $3,000 exemplary damages, for which the court gave judgment.

From that judgment this appeal was taken.

*Sayles & Bassett*, for appellant.

.  .  .  I. Was the plaintiff, upon the evidence, the parent of Lee Baker, so as to entitle him to recover under the damage act? Pasch. Dig., 15 *et seq.*

Lee Baker was born in Georgia, a slave, of slave parents, owned by different masters. His mother died about 1854. He was brought by his master to Texas, and was emancipated here; his father remained in Georgia, and was emancipated, and still lives in that state. Since the war, the putative relationship of father and son has been recognized by the parties.

Under the law of slavery, the slave was a chattel, and the marriage relation, with its concomitants of offspring, legitimacy, heirship, etc., was wholly unknown. Timmons *v.* Lacy, 30 Tex., 137, and authorities cited. The mother having died long prior to emancipation, and the relationship between her and the plaintiff being thus severed, it is not believed that any subsequent matter has intervened to change the rule of law which made Lee Baker and his putative father strangers to each other in blood.

Mutual recognition could not have such effect; for, while such mutual recognition might, in the absence of proof, raise a presumption of the fact, it would be nothing more than evidence to go to the jury, subject to explanation and rebuttal, and could not prevail over the express proof made by the defendant.

The court will not, in the face of the demonstration made by defendant, that the parties could not under the law have sustained the relation of parent and child, award to the simple recognition of the parties the legal consequences of paternity and legitimacy, unless required to do so by some paramount law.

The plaintiff's counsel contend that such a rule is found in the provision of the constitution of 1869, art. XII, sec. 27.

We insist, however, that if the section could otherwise apply, it has not, nor was it intended to have, any extra-territorial operation, so as to include a party who has never resided within the state.

The section in question imposes obligations as well as confers rights; and since the plaintiff has never subjected himself, by residence or even by temporary sojourn in Texas, to the operation of the law in

question, he cannot claim its benefits, which are the compensative and correlative of the obligations imposed by it.

A state may regulate the condition, capacity and state of all persons within it; and the capacity or incapacity imposed by the law of domicile follows him elsewhere; but if this plaintiff, owing no obligation to the law of Texas, might have contracted another marriage if his slave wife was still living, or otherwise have disregarded our law with impunity, he ought not to be entitled to the benefit of a provision of law conferring a personal *status* and personal rights upon those subject to all its conditions. Story's Conflict, §§ 18, 50 *et seq.*, 65.

II. The court rightly charged the jury that the plaintiff was not entitled, on the proof, to any actual damages; but, with singular inconsistency, proceeded to charge that, if gross negligence were shown, the plaintiff might recover exemplary damages.

The effect of the charge is, that, an act of gross negligence on the part of the defendant being shown, one may, without being pecuniarily injured thereby, recover exemplary damages for the act.

The case made was not, in any event, a proper one for exemplary damages against the defendant — no fraud, malice or other improper motive being imputed to it. At most, a party injured by the negligence of its subordinate servants would be entitled to actual compensation.

But counsel and the court below rested the recovery of exemplary damages on the supposed authority of the constitutional provision (art. XII, sec. 30, Const. 1869), which reads as follows:

"Every person, corporation or company that may commit a homicide through willful act or omission, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, or such of them as there may be, separately and consecutively, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

It ought to have been a sufficient reply to this position to say that parents are not among those to whom such damages may be given.

But further, the liability under this section is only for willful acts. The charge of the court was, however, that if the allegation of gross negligence had been sustained by the proof, the plaintiff might recover exemplary damages. The substance of this charge is, that, as matter of law, gross negligence is equivalent to a willful act.

*Shepard & Garrett*, for appellee.—　.　.　.　Plaintiff and his deceased son were slaves from birth until the date of general emanci-

pation.   We contend that this issue is not properly raised in the record; the objection should have been taken by plea in abatement.

Assuming, however, that the question is before the court, we do not deny the general proposition that our former slaves could not contract valid marriages and had no rights of inheritance.   But after emancipation, the consent of slaves, we think, could relate back and give legal effect to the moral relations formerly existing.   Girod v. Lewis, 6 Mart. (La.), 559.

Is not the continual recognition by these persons, since emancipation, of the relation of parent and child sufficient to endow each with the right to inherit from the other?   And in considering the decisions relating to the legal relations of slaves, after emancipation, which were formerly made in our Southern States, we must not overlook the fact that the emancipated slave then was not a freedman in the sense of the word as applied to him now, since the amendments to the constitution of the United States.   There people are now invested with all the inalienable rights of the free born white; shall the inhuman doctrine made necessary by the laws of slavery be adhered to when its reason utterly fails?

The right of this plaintiff to inherit the cause of action is made indisputable, however, by constitutional provision enacted prior to the decease of Lee Baker.   Const. 1869, art. XII, sec. 27.   By this section the children of "all persons, who at any time heretofore lived together as husband and wife to the time of the decease of one of them," are made legitimate.

Plaintiff and the mother of Lee Baker lived together as husband and wife in the state of Georgia until the decease of the mother. They are included in the words those who "heretofore lived together," etc.   In the absence of proof the court was obliged to presume that the same rule prevailed in Georgia.   Crosby v. Huston, 1 Tex., 231; Green v. Rugely, 23 Tex., 544.   If this presumption did not lie, then it would be that the common law had always prevailed there.   At common law, slavery could not be presumed to exist at all, because of the abhorrence in which it was held, and of the utter impossibility of its existence in the land where the common law had its origin.

WATTS, J. COM. APP.— In the absence of evidence to the contrary, the presumption will be indulged that the laws of Georgia are the same as the laws of this state.   At the time of the accrual of the supposed cause of action asserted in this case, the constitution of 1869 was in force.   By section 27 of the general provisions of that instrument, it is provided that "all persons who, at any

time heretofore, lived together as husband and wife, and both of whom, by the law of bondage, were precluded from the rites of matrimony, and continued to live together until the death of one of the parties, shall be considered as having been legally married, and the issue of such cohabitation shall be deemed legitimate."

It appears from the record that the appellee, Spencer Baker, and the mother of Lee Baker were both slaves; that they lived together as husband and wife, and were so recognized, from 1847 until the death of the wife in 1854; during that time Lee was born, and had always been recognized by appellee as his son, and he had always recognized appellee as his father.

Without indulging in a discussion upon the law of slavery, or the relative rights of parties growing out of the permitted cohabitation of slaves, it is sufficient, for the purposes of this case, that by the above-quoted provision of our constitution the relation of father and son between appellee and Lee Baker was legalized; and appellee could maintain such suit, with respect to the death of that son, as was authorized to be maintained by any father in regard to that particular matter.

The court instructed the jury that the evidence furnished no basis for the recovery of actual damages, but that if they believed from the evidence that the death of Lee Baker was caused by the gross negligence of appellant, that then they might find such sum as exemplary damages as they thought proper, not to exceed the amount claimed in the petition. Under the charge the jury returned a verdict against appellant for the sum of $3,000 exemplary damages.

At common law the surviving relatives had no right of action for damages in cases like this. By statute a right of action was in such cases given for actual damages, and the persons authorized to sue are thus designated in the statute: "Surviving husband, wife, child or children, and parents of the person whose death shall have been so caused." Pasch. Dig., arts. 15 and 16.

Section 30 of the general provisions of the constitution of 1869 provides that "Every person, corporation or company that may commit a homicide through willful act or omission, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, or such of them as there may be, separately and consecutively," etc.

As was said by Justice Bonner in Railroad Co. v. Le Gierse, 51 Tex., 203, "The constitutional provision giving exemplary damages in such cases did not repeal the previous act of the legislature, but was simply cumulative. The act was intended, according to the

well-settled construction of similar statutes, to give compensatory damages only; but the constitution went a step beyond, and gave also exemplary damages."

In treating of these two kinds of damages in such cases, the one given by statute and the other by constitutional provision, in the case of Campbell *v.* H. & T. C. R. R. Co., Texas Law Journal, February 1, 1882, p. 312, Presiding Judge Walker said: " Neither the one kind nor the other being given by the common law, the plaintiff acquires his right of action for the damages he claim to the terms of that law which sanctions its recovery. In order to recover in actions of this character, the plaintiff must frame his petition for exemplary damages with reference to the distinguishing elements which characterize it; he must set up facts which, if true, entitle him to such damages."

To entitle a party to a recovery for either the actual damages awarded by the statute, or exemplary damages given by the constitution, he must not only allege such facts as entitle him to the damages sought, but he must sustain such allegations by competent evidence.

In this case there is no evidence to sustain the verdict for exemplary damages; the burden was upon the appellee to show that the death of Lee Baker occurred through the willful act or willful omission of the appellant. It might be conceded that the evidence sufficiently shows that the death was caused by the negligence or carelessness of the employees and agents of the appellant; this, however, would only entitle the appellee to a recovery for actual damages, if any were sustained. And though it amounted to gross neglect, that would not change the result under the constitution then in force, for it was only when the homicide was committed through willful act or willful omission that a right to exemplary damages accrued. That, however, is different under the present constitution; now, if the homicide be committed through willful act or willful omission or gross neglect, a right of action accrues for exemplary damages. Const. 1876, General Provisions, sec. 26. In this particular we conclude that the court erred in overruling appellant's motion for a new trial.

There is another fatal objection to the judgment awarding exemplary damages, which is fundamental. By the terms of the constitution, only the surviving husband, widow or heirs of the body of the person whose death occurred by such willful act or omission are entitled to maintain actions for and recover exemplary damages for such homicide. It will not, we apprehend, be seriously claimed that

the appellee, Spencer Baker, is heir of the body of his son, Lee Baker. That term has a well-defined meaning at common law, and includes only the children begotten by the person. That, too, is the generally, and we might add universally, accepted signification of the term, when used in common parlance. It is only those persons to whom the right is given that can maintain the suit under the constitution for exemplary damages.

Under the statute then in force, the father could maintain an action for actual damages for the death of his son, provided such actual damage is shown to have resulted to him by reason of such death; for there the right of action is given to the "surviving husband, wife, child or children, and parents of the person whose death shall have been so caused."

The other errors presented, in view of recent decisions of the supreme court, need not be considered; some of them, at least, will not likely occur upon another trial.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED

[Transferred to Tyler, and opinion delivered November 13, 1882.]