**J.D. HOFER et ux., Petitioners,**

v.

**Sharon LAVENDER, Respondent.**

No. C–2552.

Supreme Court of Texas.

July 11, 1984.
Rehearing Denied Nov. 28, 1984.

Edwards, McMains & Constant, William R. Edwards and Russell H. McMains, Corpus Christi, for petitioners.

Hunt, Hermansen, McKibben & Barger, Tom Hermansen, Corpus Christi, for respondent.

KILGARLIN, Justice.

The first of two issues involved in this case is whether exemplary damages may be recovered from the estate of a tortfeasor. Incidental to that inquiry is whether under Tex.Rev.Stat.Ann. art. 5525 (statute providing for survival of causes of action for personal injuries), exemplary damages may be recovered by persons other than those named in Tex. Const. art. XVI, § 26. J.D. Hofer, and his wife, Joan Hofer, brought suit against Sharon Lavender, personal representative of the estate of Robert W. Springate, deceased, in which, among other things, the Hofers sought exemplary damages for themselves, individu-

ally, and for the estate of their deceased daughter, June. The judgment of the trial court included an award for both sets of exemplary damages. The court of appeals concluded that exemplary damages could not be recovered against the estate of a deceased and, accordingly, reversed the judgment of the trial court and rendered judgment that the Hofers recover no exemplary damages in any capacity. 658 S.W.2d 812. We reverse the judgment of the court of appeals and reinstate the exemplary damage awards to the Hofers, individually. We sever and remand this cause to that court for a determination of Lavender's contention that the amount of exemplary damages allowed the estate of June Hofer was excessive.

June Hofer, age eighteen, while driving a vehicle, with her parents as passengers, was struck by a vehicle driven by Robert W. Springate. Tests administered shortly after the accident indicated that Springate had a 0.27% blood alcohol content. June Hofer survived the accident but a few hours. Springate died of unrelated causes before the case came to trial. In answer to special issues, the jury found Springate to have been guilty of gross negligence and awarded J.D. Hofer and Joan Hofer $100,000 each in exemplary damages. The jury likewise awarded the estate of June Hofer $200,000 in exemplary damages. Although the Hofers had pleaded for damages under Tex.Rev.Civ.Stat.Ann. art. 4671 (Texas Wrongful Death Act), there is no contention that the exemplary damages awarded to J.D. Hofer and Joan Hofer, individually, were done so pursuant to that statute. No objection to the charge was made in this respect and there has been no complaint as to excessiveness of those exemplary damages. We will, therefore, conclude that such damages were awarded to the Hofers as individuals, and are supported by actual damages awarded to the Hofers on account of their own personal injuries sustained in the accident.

The trial court defined "exemplary damages" in respect to the pertinent special issues as follows:

"Exemplary damages" means an amount which you may award in your discretion and as an example for the good of the public, in the interest of society at large in deterring the commission of similar wrongs.

The Hofers contend that under the Texas Survival Statute, all causes of action survive, both in behalf of the estate of the deceased and against the estate of the tortfeasor. The Hofers additionally assert that the constitutional designation of who may recover exemplary damages applies to wrongful death actions, only, and was not meant to preclude recovery under the survival statute. Ms. Lavender contends that as the purpose of punitive damages is punishment, and as a deceased may no longer be punished on this earth, there is no longer a basis for awarding such damages. While neither the word "punitive" nor a discussion of its purpose are contained in the court's charge, no objection was made as to the instruction other than the one that punitive damages cannot be recovered against the estate of a deceased. Nevertheless, we consider that objection sufficient to have preserved error, if any. Ms. Lavender further maintains that in any event, the estate of June Hofer is not entitled to recover exemplary damages because parents are not included among the constitutional list of those entitled to recover. While supporting Ms. Lavender's position on the first contention, the court of appeals concluded that but for the death of Springate, the constitutional provision would not have barred recovery of exemplary damages by the estate of June Hofer.

■ At common law all causes of action died with the person of the party injured or the person inflicting the injury, except damages to property. *Johnson v. Rolls*, 97 Tex. 453, 79 S.W. 513 (1904); *Johnson v. Farmer*, 89 Tex. 610, 35 S.W. 1062 (1896); and, *Watson v. Loop*, 12 Tex. 11 (1854). That was changed by the adoption of the Texas Survival Statute which was initially enacted May 4, 1895. Ch. 89, 1895 Tex. Gen.Laws 143. It has since been amended, and now reads as follows:

All causes of action upon which suit has been or may hereinafter be brought for personal injuries, or for injuries resulting in death whether such injuries be to the health or to the reputation, or to the person of the injured party, shall not abate by reason of the death of the person against whom such causes of action shall have accrued, nor by reason of the death of such injured person, but, in the case of the death of either or both, *all such causes of action shall survive to and in favor of the heirs and legal representatives and estate of such injured party and against the person, or persons liable for such injuries and his or their legal representatives,* and may be instituted and prosecuted as if such action or persons against whom same accrued were alive. (emphasis added). Tex.Rev.Civ.Stat.Ann. art. 5525. Because of the survival statute, it is now accepted that death of the injured party does not bar a recovery of exemplary damages by the estate. *Castleberry v. Goolsby Building Corp.,* 617 S.W.2d 665 (Tex.1981); *Folsom Investments, Inc. v. Troutz,* 632 S.W.2d 872 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Pace v. McEwen,* 574 S.W.2d 792 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Houston American Life Insurance Co. v. Tate,* 358 S.W.2d 645 (Tex.Civ.App.—Waco 1962, no writ). The argument advanced by the Hofers is that as the survival statute has been interpreted to allow the recovery of exemplary damages to survive

the death of one injured, why would not the same survival statute permit the recovery of exemplary damages against a deceased tortfeasor?

The Hofers rely on the survival statute in their attempt to distinguish this case from that of *Wright's Administratrix v. Donnell,* 34 Tex. 291 (1870), relied upon by Lavender. That "semi-colon" court [1] opinion held that punitory or vindictive damages could not be recovered against the representative of a deceased. It is true that many other jurisdictions have also denied the recovery of exemplary damages from the estate of a deceased tortfeasor. However, the overwhelming majority of those states which have done so have acted on the basis of either a statute which explicitly precluded such a recovery [2] or on premises which did not involve the interpretation of a survival statute. [3]

Statutory enactments by other states prohibiting or allowing punitive damages provide no assistance in resolving the specific issue before us: whether exemplary damages may be assessed under a statute which specifically provides that all causes of action survive against the representative of a deceased. As to the cases cited in footnote three, two important considerations must be observed. First, these cases did not interpret the right of recovery under a survival statute. Second, all of these opinions are based on the concept that the

---

**1.** So called because of an opinion by that court seeking to void the election of Democrat Richard Coke as Governor over incumbent Republican Edmund J. Davis. The holding of the court was based on the position of a semicolon in an election law. *Ex Parte Rodriguez,* 39 Tex. 705 (1873). With the refusal of President Grant to intervene in behalf of Davis by supplying Union troops, the holding never became effective and Coke became Governor.

**2.** *California,* CAL. PROB. CODE § 573 (West Supp. 1984); *Colorado,* COLO. REV. STAT. § 13–20–101 (1973); *Maine,* ME REV. STAT. ANN. tit. 18–A, § 3–818 (1981); *Massachusetts,* MASS. ANN. LAWS Ch. 230, § 2 (Michie/Law. Co-op. 1974); *Mississippi,* MISS. CODE ANN. § 91–7–235 (1972); *Nevada,* NEV. REV. STAT. § 41.100 (1979); *New York,* N.Y. EST. POWERS & TRUSTS LAW § 11–3.2 (Consol.1974); *Ore-*

*gon,* OR. REV. STAT. §§ 30.080, 30.020 (1983); *Rhode Island,* R.I. GEN. LAWS § 9–1–8 (1970); *Virginia,* VA. CODE § 8.01–25 (1977); and, *Wisconsin,* WIS. STAT. ANN. § 895.01 (West 1983). Oklahoma has a statute which specifically authorizes recovery of punitive damages against a decedent's estate. OKLA. STAT. ANN. tit. 12 § 1038 (West 1961).

**3.** *Meighan v. Birmingham Term. Co.,* 165 Ala. 591, 51 So. 775 (1910); *Braun v. Moreno,* 11 Ariz. App. 509, 466 P.2d 60 (1970); *Johnson v. Levy,* 122 La. 118, 47 So. 422 (1908); *Tietjens v. General Motors Corp.,* 418 S.W.2d 75 (Mo.1967); *Barnes v. Smith,* 305 F.2d 226 (10th Cir.1962) (New Mexico); *Thorpe v. Wilson,* 58 N.C. App. 292, 293 S.E.2d 675 (1982); *Hayes v. Gill,* 216 Tenn. 39, 390 S.W.2d 213 (1965); and, *Marcante v. Hein,* 51 Wyo. 389, 67 P.2d 196 (1937).

purpose of punitive damages is to punish the wrongdoer and that as the wrongdoer, in death, is beyond punishment, the reason for assessment no longer exists. Specifically, there is no mention, except by the courts of Alabama and Wyoming, that an additional purpose of such damages is to serve as an example and warning to others. In *Meighan v. Birmingham Term. Co.,* 165 Ala. 591, 51 So. 775 (1910), the Alabama court does mention that punitive damages serve as a warning to other wrongdoers, but concludes that punitive damages are assessed as punishment. In *Marcante v. Hein,* 51 Wyo. 389, 67 P.2d 196 (1937), the Wyoming court states that "since the purpose of punitive damages is to punish the wrongdoer for his acts" and to deter him from future commission of wrongs, such damages are not allowed. These cases, not being based on survival act interpretations, offer little assistance in resolving the issue, as previously stated. Further, whatever may be the majority rule in other jurisdictions or be the expression of commentators does not necessarily mean it will be the rule of law in Texas. *See Givens and Dawson d/b/a United Farm Agency v. Dougherty,* 671 S.W.2d 877 (Tex.1984).

Courts in five states have addressed the question which is presented here, i.e., the assessment of exemplary damages against a deceased tortfeasor under a survival statute. Those states are Florida, Iowa, Minnesota, Nevada[4] and West Virginia. The statutes of the states are similar to that of Texas in regards to the language that all causes of action survive in behalf of a deceased and against a deceased tortfeasor.[5] Florida and West Virginia have concluded that exemplary damages may be assessed against the estate of a deceased tortfeasor. The courts of the other three states have concluded to the contrary. In analyzing the reasons for different results in interpreting similar statutes, the distinc-

tions turn on the reasons for assessing punitive or exemplary damages. The Minnesota Supreme Court in *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 408 (Minn. 1982), concluded that actual damages were recoverable under its survival statute against the estate of a deceased, but that punitive damages were not. However, the Minnesota court very plainly states "[t]he purpose of punitive damages is to punish the tortfeasor where the act is malicious or willful, and to deter him from repeating the wrongful act (authorities cited). Obviously, if the tortfeasor is dead, no need exists for either punishment or deterrence." That court concludes its opinion by stating that to punish the estate would be to ignore the entire purpose of punitive damages. A series of Iowa cases have denied recovery of punitive damages from the estate of a deceased. *See, e.g., Rowan v. LeMars Mutual Insurance Company of Iowa,* 282 N.W.2d 639 (Iowa 1979); *Wolder v. Rahm,* 249 N.W.2d 630 (Iowa 1977); and, *Stephenson v. Stoufer,* 237 Iowa 513, 21 N.W.2d 287 (1946). Each of these cases cite the previous Iowa case as authority, ending up with *Sheik v. Hobson,* 64 Iowa 146, 19 N.W. 875 (1884). In that case, the Iowa Supreme Court interpreted Iowa Code § 2525 (1873), a predecessor to the current Iowa Survival Statute. The language of that case makes it clear that even though all causes of action survive, the purpose of punitive damages under Iowa law, being punishment only, prohibits collection from the estate of a deceased tortfeasor. Likewise was the situation in *Allen v. Anderson,* 93 Nev. 204, 562 P.2d 487 (1977), where the Nevada Supreme Court concluded that as a deceased tortfeasor could no longer be punished, the reason for punitive damages no longer existed.

Conversely, the reason for allowing exemplary damages against estates of deceased tortfeasors by the courts of Florida and West Virginia is because each of those

---

**4.** Nevada subsequently enacted a statute prohibiting recovery of exemplary damages from a deceased tortfeasor's estate.

**5.** FLA. STAT. ANN. § 46.021 (West 1969); IOWA CODE ANN. § 611.20 (West 1950); MINN. STAT. ANN. § 573.01 (West Supp. 1984); NEV. REV. STAT. § 41.100 (1979); and W. VA. CODE § 55–7–8a (Supp.1981).

states recognize reasons for assessing exemplary damages other than punishment, alone. In *Atlas Properties v. Didich,* 213 So.2d 278 (Fla.Dist.Ct.App.1968), *cert dism'd,* 226 So.2d 684 (Fla.1969), the argument advanced against recovery of exemplary damages was that the Florida Survival Statute, being in derogation of common law, must be strictly construed, which would prevent a recovery of punitive damages. The Florida court disagreed, saying that all causes of action survive and, therefore, a demand for exemplary damages survives the death of either party. The reason given was that Florida recognizes a tort action as being remedial. While much of the language above discussed was dicta to the opinion, it was not disapproved by the Florida Supreme Court. A year later, the reasoning in the *Atlas Properties* case was specifically adopted as the holding in *Johnson v. Rinesmith,* 238 So.2d 659 (Fla.Dist. Ct.App.1969), *cert. denied,* 241 So.2d 857 (Fla.1970), which held that a claim for exemplary damages survives the death of a tortfeasor. It is of interest that in *Braun v. Moreno,* 11 Ariz.App. 509, 466 P.2d 60 (1970), the Arizona Court of Appeals had been cited to *Atlas Properties v. Didich* as authority for recovery of exemplary damages against the estate of a deceased. In rejecting this argument, the Arizona court specifically distinguished the case before it from that in Florida, by noting that the Florida case involved the construction of a survival statute.

In *Perry v. Melton,* 299 S.E.2d 8 (W.Va. 1982), the Supreme Court of Appeals of West Virginia analyzed the cases of many other jurisdictions, and concluded that the basis of those decisions was because the purpose of punitive damages under the laws of such other states was to punish. The West Virginia court said:

> Punitive damages in this state serve other equally important functions and are supported by public policy interests going beyond simple punishment of the wrongdoer. Consequently, the reasons for them do not cease on the death of the tortfeasor.

*Id.* at 12. The West Virginia court continued by pointing out that punitive damages go beyond personal vindication, that they serve a societal function of deterring others from engaging in similar acts and provide additional compensation to sufferers from a defendant's reckless and wanton misconduct.

■ The analysis of cases from other jurisdictions causes us to conclude that the issue at hand must be resolved on the basis of what Texas has heretofore recognized as the purpose of punitive, vindictive, or exemplary damages. Of course, punishment of the wrongdoer is one purpose of exemplary damages. But, as recently as last year, we have stated that another of the purposes of such damages is to serve as an example to others. *Pace v. State,* 650 S.W.2d 64, 65 (Tex.1983). We said the same thing in *Sheffield Division, Armco Steel Corp. v. Jones,* 376 S.W.2d 825, 831 (Tex.1964). An earlier supreme court had concluded that exemplary damages also exist to reimburse for losses too remote to be considered as elements of strict compensation. *Mayer v. Duke,* 72 Tex. 445, 10 S.W. 565 (1889). In *Allison v. Simmons,* 306 S.W.2d 206 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.), it was held that exemplary damages existed as an example for the good of the public and to compensate for inconvenience and attorney's fees. Another statement as to the purpose of exemplary damages in Texas appears in *Foster v. Bourgeois,* 253 S.W. 880 (Tex.Civ.App.— Austin 1923), *aff'd,* 113 Tex. 489, 259 S.W. 917 (1924), where it was stated:

> The theory of exemplary, punitive, or vindictive damages, or as they are sometimes called "smart money," involves a blending of the interest of society in general with those of the aggrieved individual in particular. According to most authorities, such damages are awarded by way of punishment to the offender, and as a warning to others; although by other authorities they are awarded by way of example and not by way of punishment.

253 S.W. at 885. One of the earliest recorded cases on the subject, *Cole v. Tuck-*

*er,* 6 Tex. 266 (1851), observed that "[i]t is only by legal fiction that the plaintiff suing for exemplary damages represents the public." That opinion concluded that damages are given as compensation to the sufferer, as well as for punishment of the offender. *Id.* at 268.

█ Inasmuch as Texas case law indicates that the public policy for exemplary damages includes equally important considerations other than punishment of the wrongdoer, the situation in this case is far more closely akin to the holdings of the Florida and West Virginia courts than it is to those of the Iowa, Minnesota, and Nevada courts. For this reason, we conclude that under the Texas Survival Statute there exists a right to collect exemplary damages from the estate of a deceased tortfeasor. Therefore, the trial court judgment in behalf of the Hofers, individually, should be affirmed and the judgment of the court of appeals accordingly reversed. To the extent that *Wright's Administratrix v. Donnell* is in conflict, it is overruled. The dictum in *Sears, Roebuck and Co. v. Jones,* 303 S.W.2d 432 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e), restating the rule of *Wright's Administratrix,* is disapproved.

Having so concluded, we are compelled to address the alternative argument presented by Ms. Lavender. That argument, restated, is that as the Hofers are not among the class of persons entitled to recover exemplary damages for wrongful death, as delineated by Tex. Const. art. XVI, § 26, they may not recover under the guise of the survival statute. That constitutional provision is as follows:

> Every person, corporation, or company, that may commit a homicide, through willful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

The original Wrongful Death Act was contained in Ch. 35, 1860 Tex.Gen.Laws 33. The purpose of the act was to create a cause of action for a designated class of persons on account of the wrongful death of one bearing a relationship in a certain degree of consanguinity. Those now entitled to bring a wrongful death action are limited to the surviving husband, wife, children and parents of the deceased. Tex. Rev.Civ.Stat.Ann. art. 4675. Early on it was held that the Wrongful Death Act was not intended as a survival statute. *March v. Walker,* 48 Tex. 372, 375 (1877).[6] The interpretative commentary to Tex. Const. art. XVI, § 26 states that "[i]f the [1860] act created a new cause of action, distinct from any that the deceased might have had, had he survived, then exemplary damages would die with the deceased. On the other hand, if the cause of action was a mere continuation of the deceased's cause of action, exemplary damages would still be a part of the judgment that the deceased's family could collect." The reason for adoption of the constitutional provision was to allow for exemplary damages under the Wrongful Death Act because of the early interpretation that such damages were not authorized by the act under the theory that the act created a new cause of action.

Quite plainly, the Hofers have no cause of action for exemplary damages under the Wrongful Death Act because Tex.Rev.Civ. Stat.Ann. art. 4675 cannot enlarge upon Tex. Const. art. XVI, § 26. *Winnt v. International & G.N.R.R.,* 74 Tex. 32, 11 S.W. 907 (1889); *Houston & T.C. Ry. Co. v. Baker,* 57 Tex. 419 (1882). We are of the opinion, however, that the court of appeals correctly decided that pursuant to the survival statute "the heirs or representatives of the estate should be allowed to pursue the entire cause of action and not lose a part of said cause of action because they do not fall within the class of people set forth in art. XVI, § 26 of the Texas Constitu-

6. *March v. Walker* was overruled by *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983), but on different grounds.

tion." 658 S.W.2d at 814. This same question has been addressed in *Folsom Investments, Inc. v. Troutz*. In that case the court of appeals observed that the Troutz parents, suing for the death of their child, had "brought a combined survival and wrongful death action. On default judgment they would be entitled to recover exemplary damages under the Survival Act." 632 S.W.2d at 877. We are not unmindful of *Scoggins v. Southwestern Electric Service Co.*, 434 S.W.2d 376 (Tex. Civ.App.—Tyler 1968, writ ref'd n.r.e.), cited by Ms. Lavender as authority. In that case the court of appeals, relying on previously cited supreme court cases, held that the provision of Tex.Rev.Civ.Stat.Ann. art. 4675, allowing parents to recover under the Wrongful Death Act, could not enlarge upon the constitutional limitation of those who could recover exemplary damages. But, the parents in *Scoggins* did not contend, nor is the issue addressed, that they could recover exemplary damages under the survival statute. Likewise, we do not consider as authority *Fleming Oil Co. v. Watts*, 193 S.W.2d 979 (Tex.Civ.App.—Texarkana 1946, writ ref'd n.r.e.). That case stands for the now repudiated premise that no exemplary damages may be recovered under a survival statute and that the only exemplary damages that may be recovered are pursuant to the Wrongful Death Act. *See Castleberry v. Goolsby Building Corp.* The closest case in support of Ms. Lavender's position was *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex.Civ.App.—Corpus Christi, 1979), *aff'd in part, rev'd and remanded in part*, 600 S.W.2d 773 (Tex. 1980). However, in the instant case, the same court of appeals disapproved its dicta in *Bedgood v. Madalin*, saying "[t]o the extent that such inconsistency exists, we withdraw that portion of the opinion that reflects such inconsistency." 658 S.W.2d at 814.

As stated in *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33 (Tex.1963), "[t]wo separate and distinct causes of action may arise where injuries wrongfully inflicted result in death." The opinion observes that statutory beneficiaries are not always enti-

tled to assert both causes of action. *Id.* at 35. The purposes of the two causes differ. The Wrongful Death Act created a new cause of action in favor of certain named survivors. The survival statute did not create a new cause of action, but kept alive the cause of action that the deceased might have had. It makes no sense to say that a tortfeasor may have exemplary damages assessed against him in favor of a decedent's estate if the beneficiaries of the estate are a spouse or children, but not if the beneficiaries are otherwise. To follow Ms. Lavender's argument to its logical conclusion, actual damages could not be recovered under the survival statute if the beneficiaries of the decedent's estate were other than those persons named in Tex.Rev.Civ. Stat.Ann. art. 4675. Such interpretation would often render meaningless the survival statute. Thus, we are of the opinion that the two most recent Texas writings on this subject, *Folsom Investments, Inc. v. Troutz* and the court of appeals' opinion in this case, correctly conclude that exemplary damages survive to the estate, whoever the beneficiaries of that estate may be.

We reverse the judgment of the court of appeals and affirm that portion of the judgment of the trial court awarding exemplary damages to the Hofers, individually. As to the exemplary damages awarded J.D. Hofer and Joan Hofer as representatives of the estate of June Hofer, we likewise reverse the judgment of the court of appeals, and remand to that court for its consideration the issue of excessiveness of the exemplary damages awarded by the trial court judgment.

SPEARS, J., dissents with opinion in which POPE, C.J., and McGEE and BARROW, JJ., join.

SPEARS, Justice, dissenting.

I respectfully dissent. I would affirm the holding of the court of appeals that exemplary damages are not assessable against a tortfeasor's estate.

The Hofers contend they are entitled to exemplary damages against Springate's es-

tate just as if he were still alive. They rely on the Texas survival statute, which provides:

All causes of action upon which suit has been or may hereafter be brought for personal injuries, or for injuries resulting in death, whether such injuries be to the health or to the reputation, or to the person of the injured party, shall not abate by reason of the death of the person against whom such cause of action shall have accrued, nor by reason of the death of such injured person, but, in the case of the death of either or both, all such causes of action shall survive to and in favor of the heirs and legal representatives and estate of such injured party and against the person, or persons liable for such injuries and his or their legal representatives, and may be instituted and prosecuted as if such person or persons against whom same accrued were alive.

Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958).

The language of the statute does not expressly allow or disallow exemplary damages against an estate. The Hofers argue that the more natural reading of the statute suggests that exemplary damages should be allowed because a cause of action, including all elements of recovery, survives as if the deceased party were still alive. Because the statutory language is not conclusive, we must decide whether construing the survival statute to allow an award against an estate serves the purposes that justify exemplary damages.

Exemplary damages unquestionably serve to punish the offender and to specifically deter him from future misconduct. *E.g., Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981); *Bernal v. Seitt,* 158 Tex. 521, 313 S.W.2d 520 (1958); *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709 (1943). Exemplary damages also make an example of the tortfeasor, which serves as a lesson to the public and as a general deterrent to similar actions by others. These dual aims were noted in *Wright's*

*Administratrix v. Donnell,* 34 Tex. 291 (1870), and were reaffirmed in *Sheffield Division, Armco Steel Corp. v. Jones,* 376 S.W.2d 825, 831 (Tex.1964), and *Pace v. State,* 650 S.W.2d 64, 65 (Tex.1983). *See also* W. Prosser, *Handbook of the Law of Torts* § 2 (4th ed. 1971); 25 C.J.S. *Damages* § 117(1) (1966); 28 Tex.Jur.3d *Damages* § 170 (1983) (collecting other Texas cases). The separate aims of punishing the tortfeasor and providing an example to deter others are mirrored by the interchangeable use of the terms "punitive" and "exemplary" to describe these damages.

Springate's death made legal punishment impossible. No social benefit is served by attempting to punish his estate and, hence, his heirs. The Hofers apparently recognized as much and elected to submit only the exemplary element. The jury was given the following instruction:

"EXEMPLARY DAMAGES" means an amount which you may award in your discretion and as an example for the good of the public, in the interest of society at large in deterring the commission of similar wrongs.

No damages were sought or awarded as punishment. The issue then is whether the aim of general deterrence, alone, is sufficient to support an award of exemplary damages.

No Texas court has addressed this specific issue or the broader question of whether the survival statute altered the common law rule precluding exemplary damages against an estate. The case of *Wright's Administratrix v. Donnell,* 34 Tex. 291 (1870), holding that exemplary damages could not be assessed, was decided long before the survival statute was enacted. The court of appeals decision in *Sears, Roebuck & Co. v. Jones,* 303 S.W.2d 432 (Tex.Civ.App.—Waco 1957, writ ref'd n.r. e.), also denied exemplary damages, but the effect of the survival statute was not addressed.

The Restatement (Second) of Torts also does not allow exemplary damages against

a tortfeasor's estate.[1] A number of decisions from other jurisdictions support this position, but, like the prior Texas cases, none address the issue of whether the general deterrent aim of exemplary damages is sufficient to allow recovery under a broadly worded survival statute such as article 5525. Many of the states whose courts have not allowed exemplary damages [2] also had survival statutes that specifically prohibit recovery of exemplary damages from a deceased tortfeasor's estate.[3] A second group of cases disallowed exemplary damages without discussing the effect of a survival statute.[4]

Because the jury instruction excluded any reference to punishment, the award cannot be disallowed on the basis that it attempts to punish a dead man. The Hofers do not contend that we should allow exemplary damages in order to punish Springate or his estate. Their argument is that, even without inflicting punishment, exemplary damages continue to act as a deterrent to others and are supportable on that basis.

In my opinion, the punitive and deterrent aims of exemplary damages are not separable. The general deterrent effect of an award cannot be considered in isolation, because to a large extent general deterrence depends on punishment. Specifically, members of the public are deterred from similar misconduct because they witness the wrongdoer's punishment. When, through death, the tortfeasor is no longer subject to legal punishment, the general deterrent effect likewise is greatly diminished, if not completely frustrated. Effective deterrence cannot be achieved when punishment is impossible. For this reason, the deterrent function of exemplary damages is insufficient to support an award when the tortfeasor dies before trial. By separating the dual aims of exemplary damages, the court creates the potential for double recovery. The court's reasoning will allow parties to submit one issue seeking damages to punish and deter the tortfeasor and another issue seeking damages as an example to others.

1. Section 926 provides:
     Under statutes providing for the survival or revival of tort actions, the damages for a tort not involving death for which the tortfeasor is responsible are not affected by the death of either party before or during trial except that:
     \*      \*      \*      \*      \*      \*
     (b) the death of the tort feasor terminates liability for punitive damages.
RESTATEMENT (SECOND) OF TORTS, § 926(b) (1979).

2. See *Bancroft-Whitney Co. v. Glen,* 64 Cal. 2d 327, 49 Cal. Rptr. 825, 411 P.2d 921 (1966); *Mervis v. Wolverton,* 211 So.2d 847 (Miss.1968); *Summa Corp. v. Greenspun,* 96 Nev. 247, 607 P.2d 569 (1980); *Gordon v. Nathan,* 43 A.D.2d 917, 352 N.Y.S.2d 464 (N.Y.App.Div.1974); *Ashcraft v. Saunders,* 251 Or. 331, 444 P.2d 924 (1968); *Dalton v. Johnson,* 204 Va. 102, 129 S.E.2d 647 (1963).

3. See *California,* CAL. PROB. CODE § 573 (West Supp. 1964); *Mississippi,* MISS. CODE ANN. § 91-7-235 (1972); *Nevada,* Nev. Rev. Stat. § 41.100 (1979); *New York,* N.Y. EST. POWERS & TRUSTS LAW § 11-3.2 (Consol. 1974); *Oregon,* OR. REV. STAT. §§ 30.020, –.080 (1983); *Virginia,* VA. CODE § 8.01-25 (1977); *see also Colorado,* COLO. REV. STAT. § 13-20-101 (1973); *Maine,* ME. REV. STAT. ANN. tit. 18-A, § 3-818 (1981); *Massachusetts,* MASS. ANN.

LAWS ch. 230, § 2 (Michie/Law. Co-op. 1974); *Rhode Island,* R.I. GEN. LAWS § 9-1-8 (1970); *Wisconsin,* WIS. STAT. ANN. § 895.01 (West 1983).

4. See *Meighan v. Birmingham Terminal Co.,* 165 Ala. 591, 51 So. 775 (1910); *Braun v. Moreno,* 11 Ariz. App. 509, 466 P.2d 60 (1970); *Johnson v. Levy,* 122 La. 118, 47 So. 422 (1908); *Tietjens v. General Motors Corp.,* 418 S.W.2d 75 (Mo.1967); *Barnes v. Smith,* 305 F.2d 226 (10th Cir. 1962) (applying New Mexico law); *Thorpe v. Wilson,* 58 N.C. App. 292, 293 S.E.2d 675 (1982); *Morriss v. Barton,* 200 Okl. 4, 190 P.2d 451 (1947) (Oklahoma has since enacted a survival statute that allows recovery of exemplary damages from a decedent's estate. *See* OKLA. STAT. ANN. tit. 12, § 1038 (West 1961)); *Hayes v. Gill,* 216 Tenn. 39, 390 S.W.2d 213 (1965); *Mercante v. Hein,* 51 Wyo. 389, 67 P.2d 196 (1937).
     A number of these cases are also distinguishable because the courts only considered the frustrated punitive aim and did not discuss the viability of the general deterrent effect of an award. This distinction was recognized in *Perry v. Melton,* 299 S.E.2d 8 (W.Va.1982), which held that exemplary damages were recoverable because they also served to deter others and provide additional compensation. *See also Johnson v. Rinesmith,* 238 So.2d 659 (Fla.Dist.Ct.App. 1969), *cert. denied* 241 So.2d 857 (Fla.1970).

The court has succeeded only in punishing the innocent heirs of the deceased, a result reminiscent of the feudal doctrine of corruption of blood. *Cf.* Tex. Const. art. I, § 21. I would hold that, under article 5525, exemplary damages may not be assessed against a tortfeasor's estate.

POPE, C.J., and McGEE and BARROW, JJ., join in this dissent.

POPE, Chief Justice, dissenting on motion for rehearing.

I respectfully dissent. I would not visit punishment upon the children and family of the deceased wrongdoer in either a criminal action or a civil action. Plaintiffs, in pressing the right to recover punitive damages from a dead person, accelerate the need for a reexamination of the whole subject of punitive damages. The court holds that the purpose of punitive damages is to punish, to deter others by example, and also to compensate for remote and uncompensated actual damages. If those are the varied purposes, then awards for punitive damages are not anchored to sound doctrinal underpinnings. The whole subject of punitive damages needs study.

Professor Dorsey D. Ellis, Jr. in his article, *Fairness and Efficiency in the Law of Punitive Damages,* 56 S.CAL.L.REV. 1 (1982), explains that the concept of punitive damages exists somewhere in the borderland between criminal law and torts, and yet it has received only scant attention and is usually relegated to discussion in a footnote. Whether the remedy is civil or criminal in nature, punitive damages are awarded upon vague standards not found in the criminal law and not permitted in the civil law in assessing all other kinds of damages.

I agree with Justice Spears' dissent that the only sound basis for continuing to award punitive damages is that they punish wrongdoers. To say that punitive damages serve as an example and deter egregious conduct is merely to state the purpose of punishment.

The court finds that one reason for awarding punitive damages is to compensate for those elements of injury not covered by an award of actual damages. The court cites *Mayer v. Duke,* 72 Tex. 445, 10 S.W. 565, 569 (1889) for its statement that punitive damages compensate a claimant for losses too remote to be considered as elements of compensation. It cites *Allison v. Simmons,* 306 S.W.2d 206 (Tex.Civ.App. —Waco 1957, writ ref'd n.r.e.), for the proposition that punitive damages compensate for inconvenience and attorney fees. Early decisions by this court permitted punitive damages because the law failed to recognize all of the damages required to fully compensate a plaintiff. *Stuart v. Western Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351 (1885); *Flanagan v. Womack & Perry,* 54 Tex. 45 (1880).

If punitive damages are presently used only to cloak additional elements of actual damages, they should not be allowed at all. We are careful to require a measure of certainty in all other forms of compensatory damages; why should we allow punitive damages to stand alone without any standards or instructions necessary for recovery? If punitive damages serve to permit recovery for some kind of unmentioned compensation, how can we know that there is not a double recovery? If punitive damages mask phantom elements of actual damages, why is it that a plaintiff in an ordinary negligence case is denied those illusive forms of compensatory damages, but a plaintiff can recover them when he proves gross negligence? For example, attorney fees are not recoverable in a negligence case, and they should not be recovered under the guise of punitive damages. We should no longer countenance this legerdemain. We should address the matter of any uncompensated actual damages forthrightly. Certainly we should not permit punitive damages to be an indirect method of collecting attorney fees.

Tangential forms of compensatory damages, if ever justifiably recovered as punitive damages, are now items added to the catalogue of elements that have been carefully isolated, articulated, and explained to

juries. Past and future earnings, past and future pain and suffering, past and future medical expenses, funeral costs, loss of society, disfigurement, loss of consortium, emotional trauma, past and future mental anguish constitute recoverable items that make the victim whole. Any additional actual damages should be ·added to the list; they should not be allowed to masquerade as punitive damages.

Since punishment and deterrence are the true reasons for punitive damages, and since compensation to victims is not a sound basis for punitive damages, we need to examine the relationship between criminal and civil fines. Punishment is the common thread that has always run through the Texas cases allowing punitive damages. *Smith v. Sherwood,* 2 Tex. 460, 463 (1847). The damages are not only awarded for the benefit of the aggrieved party, but they are granted to further the public good. *Cole v. Tucker,* 6 Tex. 266 (1851); *Graham v. Roder,* 5 Tex. 141, 149 (1849). They are permitted as a "private remedy to become an instrument of public correction." *Graham v. Roder,* at 150. Punitive damages, says *Cotton v. Cooper,* 209 S.W. 135, 138 (Tex. Comm'n App.1919, opinion adopted), "are not awarded to enrich the injured party, but are intended rather for the public good .... " They are compensation for a "quasi-criminal act of commission or malfeasance." *Southern Cotton Press Co. v. Bradley,* 52 Tex. 587, 601 (1880).

If we are to continue using punitive damages as a private system of law enforcement for conduct that offends public standards, we must consider innovative ways to improve that system. Who should receive the money derived from the trial that enforces the public good? Should fines imposed for civil wrongs that offend the public go to the state? The tort victim is entitled to be made whole; that should be accomplished by allowing him full compensation for every kind of damage suffered. Some scholars are asking why *all* of the punitive damages award should go to the victim, when it serves as a civil fine or penalty recovered to benefit the whole public. The victim, who affords the means and provides the attorney to suppress the anti-social conduct, needs some incentive to bring forward the extra proof required to punish the tortfeasor. *See* Cooter, *Economic Analysis of Punitive Damages,* 56 S.CAL.L.REV. 79, 90 n. 9 (1982). For his service the attorney should recover a fair fee, perhaps one-third of the punitive damages. If we permit recovery of punitive damages for the public good against a deceased person, I would divide that recovery, after attorney fees, equally between the plaintiffs and the State's General Fund.

GONZALEZ, J., joins in this dissent.