[601 NYS2d 276]

ZURICH INSURANCE COMPANY, Appellant-Respondent, v SHEAR-
SON LEHMAN HUTTON, INC., Formerly Known as SHEARSON
LEHMAN BROTHERS, INC., Respondent-Appellant.

First Department, August 12, 1993

APPEARANCES OF COUNSEL

*Ignatius John Melito* of counsel, New York City *(S. Dwight Stephens* with him on the brief; *Siff Rosen, P. C.,* attorneys), for appellant-respondent.

*Gregory S. Mertz* of counsel, Burlington, Vermont *(Keith J. Kasper* and *George A. Michak* with him on the brief; *McCormick, Fitzpatrick & Mertz, P. C.,* and *Jacobson & Triggs,* New York City, attorneys), for respondent-appellant.

**OPINION OF THE COURT**

KUPFERMAN, J.

This appeal presents the question of whether plaintiff Zurich Insurance Company has a duty to provide coverage to defendant Shearson Lehman Hutton, Inc., for punitive damage awards rendered against it in two separate slander ac-

tions, one by a former customer in Federal court in Georgia and the other by a former employee in State court in Texas.

The parties cross-appeal from an order and judgment (one paper) of the Supreme Court, New York County (Carol E. Huff, J.), entered March 11, 1993, which granted plaintiff's motion pursuant to CPLR 3212 for summary judgment and declared that the punitive damage award and fraud claim in *Simon v Shearson Lehman Bros.* (US Dist Ct, ND Ga, Civ No. C85-2006A) are not covered by a liability policy issued by Zurich to American Express Company, of which Shearson is a subsidiary, but that the punitive damage award in *Tucker v Shearson Lehman Bros.* (Dist Ct, Nueces County, No. 86-5251-E [Tex]) is covered by Zurich's policy and severed all other claims, counterclaims, and demands by the parties.

In *Simon (supra),* the Eleventh Circuit, in pertinent part, reinstated a jury award of punitive damages for slander, but ordered a new trial unless plaintiff accepted the reduced sum of $1 million (895 F2d 1304). In *Tucker,* the Texas Court of Appeals affirmed a jury verdict in favor of a former Shearson stockbroker upon a finding of slander and its award of $84,000 in lost earnings in the past, $212,000 for past and future damage to reputation and $1 million in exemplary or punitive damages (806 SW2d 914).

As held by the Court of Appeals in *Home Ins. Co. v American Home Prods. Corp.* (75 NY2d 196, 200), it is well established that "New York public policy precludes insurance indemnification for punitive damage awards, whether the punitive damages are based upon intentional actions or actions which, while not intentional, amount to 'gross negligence, recklessness, or wantonness' *(Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 400) or 'conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard' *(Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218, 227)."

In *Public Serv. Mut. Ins. Co. v Goldfarb (supra),* a former patient sought punitive damages against her dentist based upon an act of sexual abuse alleged to have occurred in the course of dental treatment, while in the *Hartford* case *(supra),* the punitive damages claim was based upon two police officers' alleged violation of the Civil Rights Act (42 USC § 1983) in using nightsticks to awaken a drunken man sleeping on the grass alongside a public street. In response to the argument that those claims involved alleged wrongs which could be

found to be more grievous in nature than the wrongful conduct in a case based upon negligence or products liability, the Court in *Home Ins.* held, however, "that the policy articulated in *Public Serv. Mut.* and *Hartford Acc.* should apply equally to cases involving conduct which, although *not intentional,* is found to be grossly negligent, or wanton or so reckless as to amount to a conscious disregard of the rights of others." (75 NY2d, *supra,* at 201.)

Most importantly, for purposes of this appeal, the Court stated: "Nor should New York policy be applied any differently solely because the punitive damages award happens to have been rendered in another State. It is the punitive nature of the award coupled with the fact that a New York insured seeks to enforce it in New York against a New York insurer which calls for the application of New York public policy. To determine whether there should be reimbursement in New York for an out-of-State punitive damages award, we must examine the nature of the claim, including the degree of wrongfulness for which the damages were awarded in the foreign State, as well as that State's law and policy relating to punitive damages in order to properly ascertain whether reimbursement would offend our public policy." *(Supra,* at 201.)

Applying the foregoing standards to the facts of this case, we agree with the IAS Court that the punitive damage award and fraud claim in *Simon* are not covered by Zurich's policy, but disagree with its holding that the award in *Tucker* is covered.

The different conclusions reached by the court are based upon a perceived distinction between Georgia and Texas law and the purportedly different purposes of punitive damages awards in each State. However, a reading of the two decisions reveals no significant difference between the rationales underlying the respective awards.

As found by the IAS Court, in *Simon,* the award of $1 million in punitive damages for slander was premised on a finding of actual malice and was intended as a deterrent or punishment. Indeed, in reducing the punitive damage award from $5 million to $1 million, the Eleventh Circuit stated: "Thus, we find that in 'keeping the verdict "within reasonable bounds considering the purpose to be achieved as well as the * * * defendant's [intent]," ' and in considering the assets of the appellee, Simon is entitled to $1,000,000.00 in punitive

damages as the maximum amount which the law will accept as a deterrence." (895 F2d 1304, 1321, *supra* [Clark, J.].)

Regarding *Tucker,* however, the court found that although the actual malice standard applied by the Texas court, as evidenced by the charge to the jury and confirmed by the Texas Court of Appeals, included conduct done with reckless disregard, "[t]he purpose of punitive damages in Texas includes, 'equally important considerations other than punishment of the wrongdoer' *(Hofer v. Lavender,* 679 SW2d 470, 475) including reimbursement for losses too remote to be considered as elements of strict compensation. *(Mayer v. Duke,* 10 SW 565; *Hofer v. Lavender,* supra)." Thus, it concluded that inasmuch as "the Texas punitive damage award encompasses both a punitive (deterrent) and compensatory purpose, it cannot be said that insurance reimbursement would violate New York public policy."

In its opinion in *Hofer v Lavender (supra),* in which the pertinent issue was whether the sole purpose of exemplary or punitive damages is punishment and thus whether they may be recovered from the estate of a deceased tortfeasor, the Texas Supreme Court merely held that such a right exists under the Texas Survival Statute inasmuch as Texas case law indicates that the public policy for exemplary damages includes equally important considerations other than punishment of the wrongdoer and, consequently, the reasons for awarding such damages do not cease upon the death of the tortfeasor.

Likewise, in *Mayer, Kahn & Freiberg v Duke* (72 Tex 445, 453, 10 SW 565, 569, *supra),* the Supreme Court of Texas stated in pertinent part:

"Our courts permit damages by way of punishment in a proper case, but also in allowing exemplary damages permit a recovery for losses too remote to be considered as elements of strict compensation.

"When an attachment has been wrongfully and maliciously sued out the jury are permitted to take into consideration the loss of credit in assessing the exemplary damages. We are of opinion that in such a case it should not be held error for the court to instruct the jury that if they find that the attachment was both wrongful and malicious they should give exemplary damages."

The pertinent issue, however, was whether it was error for the trial court to charge the jury that if it found malice, it

"should" rather than "may" award vindictive or exemplary damages (no error was found).

Thus, it is clear that Texas, as do Georgia and New York, considers the nature of punitive damages to be both punitive and deterrent and dependent upon the degree of wrongfulness for which they are awarded.

Dispositive of the issue before us is the Texas Court of Appeals opinion in *Tucker* in which the court found that the $1 million awarded in exemplary damages bore a reasonable relationship to the actual damages and special damages awarded by the jury. The court noted that the trial court properly instructed the jury that exemplary damages are " '[a]n amount that you may in your discretion award as an example to others and as a penalty to or punishment of Shearson, in addition to any amount that you may have found in actual damages.' " (806 SW2d 914, 925, *supra.)*

As to Shearson's contention that Zurich is not a New York insurer entitled to application of the *Home Ins.* holding, although Zurich described itself in its complaint in this action as "a corporation existing under the laws of the State of New York, with its principal office in Schaumburg, Illinois," counsel now acknowledges that it did not discover until November 1992 in a different context that Zurich was not incorporated in New York. However, it appears that Zurich is a Swiss casualty insurance corporation established in 1872 which sought to enter the United States insurance market and chose New York as its "port of entry" into that market. To that end it organized a United States branch in 1912 under the laws of New York and we may take judicial notice, as found by the Third Department, that "[e]ven though [Zurich's] United States branch has established its headquarters in Illinois, it has retained a selling office in New York and is considered an adopted domestic of this State" *(Matter of Zurich Ins. Co. v New York State Tax Commn.,* 144 AD2d 202). It should also be noted that the *Home Ins.* case (75 NY2d, *supra,* at 200, n) involved New Hampshire and Delaware corporations, albeit they had their principal offices and places of business in New York and for purposes of that action were considered New York residents. The same rationale should apply to Zurich here.

Finally, inasmuch as we are declaring in favor of Zurich, it is unnecessary to address Shearson's claim that it should have been awarded attorney's fees in successfully defending against

this action. However, there is merit to Shearson's argument that its counterclaims for unfair and deceptive practices, and for costs incurred in defending the *Simon* and another *(Bell)* action, need not be dismissed just because New York public policy bars coverage on the punitive damages claims. Zurich may have collected a premium for coverage of punitive damages, and the record does not show otherwise.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Carol E. Huff, J.), entered March 11, 1993, should be modified, on the law, to grant plaintiff's motion and declare that the punitive damages award in *Tucker (supra)* is not covered by Zurich's policy and, as so modified, the order and judgment (one paper) should be otherwise affirmed, without costs.

CARRO, J. P., ROSENBERGER, WALLACH and RUBIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered March 11, 1993, modified, on the law, to grant plaintiff's motion and declare that the punitive damages award in *Tucker v Shearson Lehman Bros.,* is not covered by Zurich's policy and, as so modified, the order and judgment (one paper) is otherwise affirmed, without costs.