MRS. BONNIE HAYES, Administratrix of the Estate of
Luther Ray Hayes, Plaintiff in Error,

*v.*

DORIS ANN GILL, Administratrix of the Estate of Floyd
Marshall Gill, and Doris Ann Gill for herself and for the
use and benefit of John Marshall Gill and Debra Ann
Gill, Minors, Defendants in Error.

390 S.W.2d 213.

(*Jackson,* April Term, 1965.)

Opinion filed May 7, 1965.

40

Joe C. Davis, Barry & Walker, Lexington, for plaintiff in error.

Joe A. Appleby, Lexington, W. Carlton Barnes, Memphis, of counsel, Hanover, Hanover, Hanover & Walsh, Memphis, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

This case grows out of an automobile collision which occurred August 21, 1962, at about 7:15 o'clock, P.M. on Highway 20 immediately east of the corporate limits of the Town of Lexington. The drivers of both cars were killed upon impact.

A judgment in the amount of $52,000.00 was rendered in favor of Mrs. Doris Ann Gill, Administratrix of the estate of her husband, Floyd Marshall Gill. The defendant in the trial court, Mrs. Bonnie Hayes, Administratrix of the estate of her husband, Luther Ray Hayes, made timely appeal to the Court of Appeals, and upon an unfavorable ruling there, has petitioned this Court for the writ of certiorari. We granted the petition and the case has been argued at the bar of the Court.

The undisputed facts are that at the time and place of the accident, Gill was driving a Studebaker automobile in a westwardly direction and collided with a Chrysler automobile driven by Hayes in an eastwardly direction. The collision occurred at or near the crest of a hill. Further, according to the undisputed testimony and the physical facts of the case, the Hayes automobile was on the left, or the wrong side, of the highway as it proceeded

over the crest of the hill, and therefore, was being driven in violation of T.C.A. secs. 59-816 to 819, 820, 821 to 823.

The jury returned a verdict for $50,000.00 compensatory damages and $2,000.00 punitive damages.

The plaintiff in error, defendant below, in her petition for certiorari relies upon one assignment of error, which is as follows:

"The Court erred in failing and refusing to give in charge to the Jury Defendant's Special Request No. 2 which was seasonably tendered the Court in writing at the conclusion of the Court's general charge in the Jury and before the Jury retired to consider its verdict, and which said Special Request No. 2 was and is in the following words, to-wit:

" 'I charge you that if the proof shows that while driving a motor vehicle at the time in question in this suit, Luther Ray Hayes had a sudden and unforeseen attack of physical illness, not brought about by his voluntary act, which incapacitated or disabled him, so that he could not control his said motor vehicle, then he would not be guilty of any negligence, should the proof show that said motor vehicle in his charge was on the wrong side of the road at the time in question.'

"Said Special Request of Defendant was and is a proper statement of law, had not been covered by the Court in his general charge to the Jury, was proper to be given in view of the proof introduced in the case, and it was error for the Court to fail and refuse to give it in charge to the Jury."

Of course, any requested charge must be supported by evidence which would justify the granting of the

special request, so we have examined the record in search thereof. We think it proper and pertinent to quote portions of the testimony of the two eyewitnesses to the accident, Mrs. Dorothy Maness and her husband, Ray Maness.

"Q. Mrs. Maness, could you turn around there and demonstrate there that slump that you thought you saw?

"A. Like you fell over the wheel.

"Q. Fell over the wheel, or reach down to pick up a cigarette?

"A. Just looked like he fell over the wheel.

"Q. Would it have been the same thing to have reached down in the floorboard to pick up a cigarette? Wouldn't you have gotten the same impression?

"A. I guess so.

\* \* \* \* \* \* \* \* \* \*

"Q. What happened as you started to pull out and go home?

"A. This blue car pulled out from the Bowling Alley and started on up the road normal like about to where that small bridge is at and he started acting funny, kind of slumped down on the wheel like, kind of wobbling a little bit and went off to the left of the road and his left front wheel run off the road just a little and then he came back up on the road and went right on up the hill.

"Q. Where was your car then?

"A. I was about 50 to 75 feet behind him.

"Q. Was this daylight or dark?

"A. Dusky dark.

"Q. Were your lights on or not?

"A. Yes.

"Q. State to the Court and jury what happened after that, Mr. Maness?

"A. Well, I seen that there was something wrong with him and I stayed back behind, I figured something might happen, and he kept going on up the road on the wrong side of the road and I started blowing my horn at him and blinking my lights, thought maybe I could rouse him up where he would realize that he was doing—

MR. APPLEBY: We object to what he thought.

"COURT: Let the jury disregard what he thought.

"Q. Just describe what you saw, Mr. Maness?

"A. He started turning his lights on and off and went on almost to the top of the hill and just before he got to the top of the hill where it happened, he slumped down over the wheel just like he had fell out, passed out.

"Q. He just fell over on the steering wheel?

"A. Yes.

"Q. Did you continue to try to giving warning?

"A. Yes.

"Q. What did you do?

"A. I stayed about 100' behind him and he fell over the steering wheel like that and his car seemed like to

me just speeded up a little bit more, he was doing about 20 to 25 miles an hour back down the hill and when he got up there and fell over the wheel, looked like to me his car speeded up.

"Q. How far were you from the place of the impact when you say his car speeded up?

"A. About 100' behind him.

"Q. How far was his car from the time you say he speeded up to where the collision occurred?

"A. I would say about 5 or 10 seconds.

"Q. Do you know how far it was in distance?

"A. No, I don't.

"Q. Well, can you describe to the Court and jury what happened then?

"A. Well, when his car speeded up, I seen a flash of light come up over the hill and then they hit."

We think that the assignment of error concerning the requested charge must be overruled for two reasons. The first is that the special request is not supported by the evidence. Therefore, we cannot hold that the trial judge committed reversible error in refusing it for the reasons appearing herein. Of course, we recognize that there is often a very fine line of demarcation as to whether evidence is sufficient to support a requested charge; however, we think in this case the evidence was insufficient considering all of the circumstances.

■ In this case there was no autopsy report, no death certificate, no medical testimony, or any evidence whatever as to the cause of death, or to the effect that the

defendant suffered a sudden seizure or incapacitating illness.

' The only scintilla of proof purporting to show the sudden seizure of the defendant is the testimony of Mr. and Mrs. Maness, quoted previously, to the effect that the defendant appeared to "slump over the wheel." There is no testimony that the defendant appeared to be so sick that he slumped over the wheel. Thus, in order for a jury to hold for the defendant on the theory of sudden seizure, it would be necessary that the jury first infer that the defendant slumped over the wheel due to sickness, and, secondly, infer that the sickness was so severe and sudden that defendant was without means to control his automobile.

The defendant may have slumped over the wheel for many reasons, as pointed out by the plaintiff's brief. He could have fallen asleep; he could have been retrieving a cigarette from the floorboard; he could have been tampering or adjusting the electrical wiring under the dashboard, turning lights off and on, as noticed, or *ad infinitum*. For certain, however, is the fact that the testimony that "he started turning his lights on and off" cannot be reconciled with the theory of sudden seizure.

■■■ Under our holdings, proof of an essential fact may be made by circumstantial evidence, but a verdict of the jury cannot be based on speculation, surmise, or conjecture. *Gilreath v. Southern Ry. Co.*, 323 F.2d 158 (Tenn. 1963); *Delaney v. Turner*, 34 Tenn.App. 380, 237 S.W.2d 965 (1948); *Lawson v. City of Chattanooga*, 37 Tenn. App. 309, 263 S.W.2d 538 (1953); *Williams v. Daniels*, 48 Tenn.App. 112, 344 S.W.2d 555 (1961); *Evensky v. City of Memphis*, 49 Tenn.App. 24, 350 S.W.2d 76 (1961).

■ Likewise, it is not permissible to rest a decision upon a remote inference. *Quaker Oats Co. v. Davis,* 33 Tenn.App. 373, 232 S.W.2d 282 (1949); *Railroad v. Lindamood,* 111 Tenn. 457, 78 S.W. 99 (1903); *De Glopper v. Railway & Light Co.,* 123 Tenn. 633, 134 S.W. 609 (1910); *Shockley v. Produce & Ice Co.,* 158 Tenn. 148, 11 S.W.2d 900 (1928); *Gulf Refining Co. v. Frazier,* 19 Tenn.App. 76, 83 S.W.2d 285 (1934).

It is our considered opinion that the requested charge was supported by evidence which would only remotely infer that the defendant was stricken with a sudden seizure or incapacitating attack. As we view the matter, the requested charge was bottomed wholly upon speculation and conjecture.

Therefore, the charge was properly refused.

Secondly, we have thoroughly searched the record and find no notation or evidence that the request was tendered to the trial judge and denied by him. Although petitioner states that it was "seasonably tendered to the Court in writing," we are unable to find the request marked "denied" and signed by the trial judge.

■■ It is true that the request was copied in the motion for a new trial, but the motion for a new trial is in the nature of a pleading, and the facts alleged in said motion must appear from the record. Since the request was not included in the bill of exceptions, it is not a part of the record, and, accordingly, we are unable to consider it. This is a well settled rule of law. *Nashville Street Railway v. O'Bryan,* 104 Tenn. 28, 55 S.W. 300 (1900); *Brakebill & Hamilton v. Contr. & Const. Co.,* 14 Tenn. App. 531 (1931).

48

There is, however, one further matter which we consider under Rule 15(2) of this Court.

■ The question suggested is whether or not punitive damages can be awarded against the estate of a deceased person. We think not.

In 15 Am.Jur., Damages sec. 285 (1938), it is stated that generally punitive damages cannot be awarded against the estate of a deceased person. The pertinent language reads as follows:

> "Since the purpose of awarding exemplary damages is to punish the wrongdoer, as a rule his death destroys the right to them and they cannot be recovered against his estate or his heirs or other representatives."

There is an annotation in 65 A.L.R. 1049 on the same subject. The following recent cases all support the annotation and American Jurisprudence: *Amos v. Prom, Inc.,* 115 F.Supp. 127 (U.S.D.C., Iowa, N.D. 1953); *Barnes v. Smith,* 305 F.2d 226 (10 CA, 1962); *Evans v. Gibson, et al.,* 220 Cal. 476, 31 P.2d 389 (1934); *Marcante, et al v. Hein,* 51 Wyo. 389, 67 P.2d 196 (1937); *Morriss v. Barton,* 200 Okl. 4, 190 P.2d 451 (1947, rehearing denied 1948, second rehearing denied 1948); *Simone v. McKee, et al,* 142 Cal.App.2d 307, 298 P.2d 667 (1956); *Dalton v. Johnson,* 204 Va. 102, 129 S.E.2d 647 (1963).

Further, in the recent case of *Faulk v. Aware, Inc.,* 35 Misc.2d 302, 231 N.Y.S.2d 270 (1963), in a libel suit against three defendants, one of which was a corporation, and the other two being individuals (one of the two individuals died before the jury went out to consider its verdict), the court instructed the jury that punitive damages would not be recoverable from the estate of the

deceased defendant. At page 279 of 231 N.Y.S.2d, the court said:

"Now, keep in mind that punitive damages may not be assessed, because of his death, against Johnson's estate * * *."

■ We think that the proposition that punitive damages are, for the most part, meted out as punishment is well established by the Tennessee cases. *Stepp v. Black,* 14 Tenn.App. 153 (1931); *Railroad v. Guinan,* 79 Tenn. 98 (1883); *Southeastern Aviation v. Hurd,* 209 Tenn. 639, 355 S.W.2d 436 (1962); 27 Tenn.L.Rev. 381 (1960).

Since the deceased party can in no way be punished by the award of punitive damages, we see no reason for allowing such damages to be assessed. When the reason for a rule ceases to exist, the rule itself is no longer of value and is extinguished by the disappearance of the reason.

Accordingly, the judgment will be modified and the $2,000.00 awarded as punitive damages will be disallowed. Otherwise, the case is affirmed. Modified and affirmed.

BURNETT, CHIEF JUSTICE, and DYER, HOLMES and CHATTIN, JUSTICES, concur.