James E. **REYNOLDS** and Mrs. James E. **Reynolds**

v.

Bobby J. **LEWIS** ·and **Greyhound Lines, Inc.**

Civ. No. 3–76–132.

United States District Court, E. D. Tennessee, N. D.

July 20, 1976.

---

E. G. Moody, William W. Hawkins, Kingsport, Tenn., Cecil R. Jenkins, Jr., Kannapolis, N. C., for plaintiffs.

Ernest F. Smith, Kingsport, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

James E. Reynolds and his wife, Mrs. James E. Reynolds, seek damages against Bobby J. Lewis and Lewis' employer, Greyhound Lines, Inc., for personal injuries sustained in a motor vehicle accident in which a tractor-trailer truck driven by Mr. Reynolds and a Greyhound Lines bus operated by Mr. Lewis were involved. The accident occurred on June 15, 1975 on I-75 in Campbell County, Tennessee.

Mr. Reynolds was driving his tractor-trailer on the four lane highway, which had a dividing median strip, in the outside or righthand lane in a generally southerly direction at approximately 2:45 a.m., when his truck was suddenly struck in the rear by the Greyhound bus operated by Mr. Lewis as an employee of Greyhound.

The plaintiffs claim that Lewis was guilty of many acts of negligence, i. e., he failed to keep a reasonable and proper lookout ahead, failed to keep his bus under control, drove his bus at an excessive speed under the circumstances and conditions then existing, followed too closely to the truck, operated his bus in a fatigued condition, and operated it while he was ill or sick, said condition being known to him.

Violations of certain Tennessee statutes by the bus driver are also asserted.

Defendants deny liability. They say that the accident was an unavoidable one because Mr. Lewis became unconscious at or immediately prior to the time he ran into the rear of the tractor-trailer, and that under the applicable law of Tennessee, including the cases of *Robinson v. Moore,* 512 S.W.2d 573 (Tenn.App.1974); *Hayes v. Gill,* 216 Tenn. 39, 390 S.W.2d 213 (1965), and *McCloud v. City of La Follette,* 38 Tenn. App. 553, 276 S.W.2d 763 (1954); the defendants are not liable.

The issues for the determination of the Court set forth in the pre-trial order are as follows:

(1) Did defendants violate any duty owed to the plaintiffs; if so, was such violation

the proximate cause of the accident and resulting injuries?

(2) Was the accident an unavoidable one?

(3) Were plaintiffs guilty of either proximate or remote contributory negligence?

(4) If plaintiffs are entitled to recover, what is the amount of the damages?

■ If a motor vehicle driver without forewarning suddenly becomes unconscious due to a blackout, under the law of Tennessee and the general law, he is not considered negligent, and if an accident occurs it is considered unavoidable. Prosser's treatise on tort law, defines an unavoidable accident as "an occurrence which was not intended, and which, under all the circumstances, could not have been foreseen or prevented by the exercise of reasonable cautions." W. Prosser, *Handbook on the Law of Torts,* 140 (4th Ed. 1971).

Prosser states further that "the driver of an automobile who suddenly loses control of his car because he is seized with a heart attack, a stroke, a fainting spell, or an epileptic fit, or is merely overcome by slumber, is not liable unless he knew that he was likely to become ill or go to sleep, in which case he is to be found negligent in driving the car at all." W. Prosser, *Handbook on the Law of Torts,* 140–141 (4th Ed. 1971).

In *Hayes v. Gill, supra,* the Tennessee Supreme Court affirmed a trial court's refusal to charge the jury on the unavoidable accident defense, stating that the evidence offered at trial was insufficient to warrant such a charge. The testimony was to the effect that the deceased driver had "slumped over the wheel" just before the collision, and this was the only evidence purporting to show a sudden seizure. There was no medical evidence that he suffered a seizure, and the Court ruled there were too many other causes that could be advanced for the cause of the accident; for example, being "slumped over the wheel" could result from falling asleep, retrieving a cigarette, or adjusting wiring under the dashboard.

In the case under consideration, the evidence shows that Mr. Lewis had had one or two dizzy spells caused by inner-ear trouble before the accident. There is some evidence his employer, Greyhound Lines, Inc., had been advised of these dizzy spells by the doctor who may have stated in effect to the employer that such spells were considered by him to be temporary.

■ The burden of proof in this case on the unavoidable accident feature is upon the defendants; that is to say, before they can be successful with that defense they must prove by a preponderance of the evidence that Mr. Lewis was stricken with a spell that caused him to become unconscious and that as a result of the blackout or unconsciousness the bus was caused to strike the tractor-trailer.

■ This' defense has not been established by the evidence. True, there were circumstances which could be considered as causing a blackout; however, Mr. Lewis does not say that he had a blackout immediately before the accident. He frankly stated that he did not know what occurred.

Plausible argument could be made that he did not have a blackout and that the cause of the accident was his looking into the side view mirror which enabled him to see vehicles to the rear, and that this caused him to run into the truck; or it could be argued that he was fatigued and sleepy and that he momentarily went to sleep and this caused the accident. (Evidently, falling asleep is not an unavoidable accident under Tennessee law, *Hayes v. Gill, supra,* at 216.)

■ We have an innocent person here on the highway who was *driving his truck* admittedly in a careful, cautious manner on the righthand side of the roadway. This man suffered injury as a result of his tractor-trailer being run into from the rear. This innocent person, *in the opinion of the* Court, is entitled to reasonable damages for the injuries that he sustained as a direct and proximate result of the negligence of Mr. Lewis which was imputed to his employer, the Greyhound Lines, Inc., and the Court finds that the defendants were guilty of negligence which was the proximate and direct cause of the accident and resulting injuries.

During this trial, the attorneys for the respective parties requested the Court to read the depositions of Dr. Curlee and Dr. Griggs before fixing the damages and the Court agreed to do so. These depositions have been read.

Damages in personal injury cases are not easy to determine. This case is no exception to the rule. The attorneys were far apart on this question. The attorney for plaintiffs claimed too much and the attorney for the defendants claimed too little, in the opinion of the Court.

 Reynolds was forty-four years of age at the time of his accident and had a life expectancy of around twenty-two years. He made $11,121.00 in 1973 and $19,469.74 in 1974. In 1975, his earnings were around $9,500.00 to the date of injury. The hospital expense which he is obligated to pay is $747.75, and the insurance compensation carrier of the employer is obligated to pay $1,757.01. He received painful injuries to his head, left arm and leg and various injuries over the body, with greater ones to his neck and back. The most serious ones to his back appeared to be in the lower back. He has undergone considerable suffering which has caused him to become highly nervous and to lose sleep at night. He stated that he continues to suffer pain and anxiety at times.

Plaintiff had been in two accidents prior to the 1975 accident, the first one in 1969 and the second in 1973, from which he stated that he had fully recovered.

Doctor Curlee, whose deposition was taken by the defendants, described the results of his examination as follows:

"Patient showed tenderness in median line cervical spine and at base of the skull, bilateral tenderness is worse in the lower neck of the rhomboid area, 25% stricture of reflection and rotation and lateral bend. Patient also had tenderness in the mid loin and in dorsal spine in T–4 area and T–10 area. Also in mid-line at L–5 S–1 area. Reflexes of biceps and triceps were normal. Lumbar spine showed ⅓ restricted. Others were approximately normal. Straight leg raising was about 65 degrees on the left, negative on the right. Leg length was approximately equal: right 36, left 35¾ inches, circumference and calf and thigh approximately equal, biceps was approximately equal, circumference equal." (Dr. Curlee, reading from his own records, pp. 5–6, Deposition of Dr. Curlee)

He considered restriction of motion and tenderness in the neck and also the dorsal and lumbar spine areas the most significant findings. He further described the injuries as a sprain of the cervical and dorsal spine with sciatica and possible hernia with tibia disc.

As a result of the injuries, plaintiff was off from work from June, 1975 to March, 1976. Dr. Curlee fixed his disability as "[p]ermanent disability 10% of spine inclusive of pre-existing conditions. No objective evidence of permanent disability arising solely from this occurrence." That is, from the occurrence of June 15, 1975.

Plaintiff's loss of earnings was around $15,000.00 due to the injuries. He stated that he had lost one trip per week on his truck route due to the injuries and this amounted to a gross loss of $150.00 per trip. He did not indicate what the net loss would be, but we would assume that it would be around $100.00 per trip.

Doctor Boyce Griggs, Lincolnton, North Carolina, was the other doctor who testified in the case. He was so hostile, so opinionated and prejudiced in his views, that it is difficult to attach any credibility to his testimony. Dr. Griggs was the former physician of plaintiff but appeared to have become angry towards him when he sought help from an orthopedic surgeon. At times during his testimony he appeared to be disrespectful to counsel. As evidence of the doctor's ill feelings toward plaintiff, in reply to a question on cross-examination, he stated in part:

". . . Being fair to him for his chief area of complaint and sending him to man who had the capacity to help his neck. You can't deal with a man when he has money in his eye. I could smell

the odor." (Deposition of Dr. Griggs, p. 25.)

As we recall, in other parts of his testimony, he indicated that plaintiff would put off going back to work as long as he could. Such statements were contrary to the fact that Dr. Nick E. Grivas, the doctor to whom Dr. Griggs referred him, stated in his letter to Dr. Griggs, dated February 19, 1976, that:

"The patient seems anxious to return to work and I believe if his back continues to improve he should be able to return in about two weeks. I plan to see him again at that time in the hopes that this will be true." (Page 5, Exhibits to Deposition of Dr. Griggs.)

After having given all of the testimony in the case careful consideration, the Court fixes damages at $50,000.00, and damages to his wife at $1,500.00.