IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2014 Session

## BRADLEY M. BARKHURST, ET AL. v. BENCHMARK CAPITAL, INC., ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 182881-3     Michael W. Moyers, Chancellor**

_____

**No. E2013-01911-COA-R3-CV-FILED-JULY 7, 2014**

_____

This appeal concerns a dispute over damages in a fraud case. Bradley M. Barkhurst and his wife Judith R. Barkhurst ("the Plaintiffs"), victims of a Ponzi scheme, filed a complaint against Amparo Goyes Jarosh, personal representative of the estate of Charles D. Candler ("Defendant")[1], in the Chancery Court for Knox County ("the Trial Court"). The Trial Court granted summary judgment in favor of the Plaintiffs. The Plaintiffs appeal, arguing, among other things, that they should have been granted enhanced damages under the Tennessee Consumer Protection Act ("the TCPA"). We hold that enhanced damages are not available in an action against an estate. We also modify the Trial Court's judgment to include in the award to Plaintiffs certain taxes and interest that the Plaintiffs incurred in the Ponzi scheme. We affirm the judgment of the Trial Court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

Dudley W. Taylor, Knoxville, Tennessee, for the appellants, Bradley M. Barkhurst and Judith R. Barkhurst.

Terry G. Adams and Kevin J. Tonkin, Knoxville, Tennessee, for the appellee, Amparo Goyes Jarosh, personal representative of the estate of Charles D. Candler.

---

[1]In addition to suing the estate of Candler, the Plaintiffs sued Benchmark Capital, Inc. and Joyce Allen. These parties later were dismissed.

# OPINION

## Background

The underlying facts of this appeal, drawn from the affidavits of Judith Barkhurst and Amparo Goyes Jarosh, are not in dispute. The Plaintiffs hoped to provide both for their children's education and their own retirement. Toward these ends, the Plaintiffs invested all their available funds into real estate.

By 2002, the Plaintiffs' residence was paid for and they had no mortgage debt. At this time, Joyce E. Allen ("Allen"), a registered representative of Benchmark Capital, Inc. ("BCI"), was preparing the Plaintiffs' tax returns. Allen urged the Plaintiffs to take out a substantial loan against the equity in their residence and invest the loan proceeds with BCI. The Plaintiffs agreed to do so. Allen arranged a refinancing of the Plaintiffs' residence with First Tennessee Bank. The loan proceeds of $288,000 were endorsed over to BCI. Allen told the Plaintiffs that the $288,000 would be used to purchase an annuity. Allen represented that this annuity would provide enough funds to make the monthly loan mortgage payment in full and provide an additional monthly dividend payment.

In 2006, the Plaintiffs bought a lake house in Campbell County. Allen made the same pitch to the Plaintiffs regarding this house that she had regarding their residence. The Plaintiffs again agreed, and $230,949.15 of loan proceeds were turned over to Allen and BCI for "investment." The Plaintiffs again were issued a purported annuity. The Plaintiffs made nine additional separate investments of $100,000 each, all for the purpose of obtaining an annuity. The Plaintiffs later borrowed $240,000 against commercial property owned by them for the purchase of an annuity.

Over time, the Plaintiffs became concerned about their investments. The Plaintiffs met with BCI's Charles D. Candler ("Candler"). Candler assured the Plaintiffs that their investments were safe. The Plaintiffs walked away from this meeting satisfied. However, the Plaintiffs later were contacted by authorities regarding the investment scheme. The Plaintiffs learned that their annuities were worthless. Candler and Allen had, it turned out, made a number of misrepresentations to the Plaintiffs. Candler died in March 2012. Amparo Goyes Jarosh, Candler's wife and personal representative of his estate, had no personal knowledge of her late husband's business activities.

The Plaintiffs invested significant funds into the scheme. The total amount invested by the Plaintiffs through BCI was $1,750,907.15. When recovered funds and payments made to the Plaintiffs are taken into account, the Plaintiffs' net investment was $1,033,081.73. The Plaintiffs also paid $300,751.31 in interest on loans they obtained to

invest the loan proceeds with BCI. The Plaintiffs would not have taken out these loans but for the fraudulent investment scheme. The Plaintiffs also paid taxes in the amount of $33,116.88 on purported "dividends" they received on their investment. All told, taking into account the Plaintiffs' taxes and interest, the net loss incurred by the Plaintiffs through their investing with BCI and Candler was $1,366,949.92.

In May 2012, the Plaintiffs sued Defendant for fraud in the Trial Court. Among other things, the Plaintiffs sought punitive damages, or, in the alternative, treble damages under the TCPA. The Plaintiffs later moved for summary judgment, electing for recovery of treble damages. The Trial Court ultimately granted summary judgment in favor of the Plaintiffs. In its memorandum opinion and order, the Trial Court stated "Mr. Candler defrauded the Plaintiffs" and that there was no material dispute regarding liability. The Trial Court held in abeyance for six months the issue of the amount of damages to award the Plaintiffs.

In July 2013, the Trial Court entered its final order. The Trial Court, describing the investment scheme as a "massive fraudulent 'Ponzi Scheme,'" awarded the Plaintiffs their "net loss" of $1,033,081.73 as compensatory damages. The Trial Court declined to award the Plaintiffs the taxes and interest associated with their so-called investments. The Trial Court also declined to award treble damages under the TCPA. The Trial Court stated in its order that punishing the deceased Candler with treble damages would be futile, and that such an award might "have the effect of substantially monopolizing those funds remaining in the estate that can be used in an attempt to make whole those persons who have suffered at the hand of Mr. Candler . . . ." The Trial Court also awarded the Plaintiffs attorney's fees and discretionary costs. The Plaintiffs timely appealed to this Court.

## Discussion

We restate and consolidate the issues raised on appeal as follows: 1) whether the Trial Court erred in declining to award enhanced damages on the Plaintiffs' claim for violations of the TCPA; and, 2) whether the Trial Court erred in its calculation of compensatory damages.

We first address whether the Trial Court erred in declining to award enhanced damages on the Plaintiffs' claim for violations of the TCPA. The Plaintiffs argue that the Trial Court should have awarded them treble damages pursuant to Tenn. Code Ann. § 47-18-109 (a)(3). Defendant argues that Tennessee law does not allow for an award of exemplary or treble damages against a defendant estate. Therefore, according to Defendant, we never reach and need never consider the factors which guide whether to award treble damages under the TCPA.

Our Supreme Court addressed the issue of awarding punitive damages against an estate in the 1965 opinion *Hayes v. Gill*, 390 S.W.2d 213 (Tenn. 1965). *Hayes* involved a fatal two-car collision where one driver's estate sued the other for negligence and went on to be awarded punitive damages after a trial. Holding that punitive damages are inappropriate in such cases, our Supreme Court stated:

> The question suggested is whether or not punitive damages can be awarded against the estate of a deceased person. We think not.
>
> In 15 Am.Jur., Damages § 285 (1938), it is stated that generally punitive damages cannot be awarded against the estate of a deceased person. The pertinent language reads as follows:
>
>> "Since the purpose of awarding exemplary damages is to punish the wrongdoer, as a rule his death destroys the right to them and they cannot be recovered against his estate or his heirs or other representatives."
>
> ***
>
> We think that the proposition that punitive damages are, for the most part, meted out as punishment is well established by the Tennessee cases.
>
> Since the deceased party can in no way be punished by the award of punitive damages, we see no reason for allowing such damages to be assessed. When the reason for a rule ceases to exist, the rule itself is no longer of value and is extinguished by the disappearance of the reason.

*Hayes*, 390 S.W.2d at 217 (citations omitted).

In 2000, this Court recognized and reasserted our Supreme Court's 1965 holding in *Hayes*, stating "punitive damages cannot be awarded against the estate of a deceased tortfeasor." *Chapman v. Jones*, M1999-02178-COA-R9-CV, 2000 WL 13793, at *4 (Tenn. Ct. App. Jan. 10, 2000), *no appl. perm. appeal filed*. We also note that a plaintiff may not be awarded both punitive damages and treble damages for violations of the TCPA as both types of enhanced damages are designed to punish rather than to compensate, and an award of both would constitute an impermissible double recovery. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906-07 (Tenn. 1999).

In our judgment, the same policy and reasoning that our Supreme Court applied to punitive damages against an estate in *Hayes* applies equally as well to TCPA treble damages against an estate. In both cases, the primary purpose is to punish the tortfeasor. In the instant case, the tortfeasor is deceased. For the reasons mentioned in the precedent cited above, it is not our policy in this state to attempt to punish deceased tortfeasors. The Plaintiffs argue that, while Candler obviously will not be deterred from future misconduct by enhanced damages, others might be. The Plaintiffs quote our Supreme Court when it stated that "[t]he contemporary purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer *and others* from committing similar wrongs in the future." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn. 1992) (emphasis added). However, we note the conjunctive nature of this formulation and find the reasoning fully consistent with *Hayes*. In the final analysis there must be a living tortfeasor to punish in order to assess enhanced damages, whether they be punitive or treble damages under the TCPA.

Even if we err in our holding that enhanced damages are not available against a defendant estate, we believe that the Trial Court correctly ruled that an award of treble damages in this case could unacceptably deplete the estate and prevent other victims of this Ponzi scheme from recovering. The Plaintiffs argue that there is nothing in the record to support the Trial Court's finding that other victims of the Ponzi scheme even existed. We disagree. The same material facts which the Plaintiffs pled and proved to be undisputed and which entitled the Plaintiffs to summary judgment are the same facts showing other victims of the "massive fraudulent 'Ponzi Scheme'" as found by the Trial Court exist. A Ponzi scheme by its very definition includes a chain of victims, and the Trial Court properly took into account the ability of these other victims to recover. The Trial Court did not abuse its discretion in declining to award treble damages. *See Wilson v. Esch*, 166 S.W.3d 729, 731 (Tenn. Ct. App. 2004). We affirm the Trial Court's decision not to award the Plaintiffs exemplary or treble damages.

We next address whether the Trial Court erred in its calculation of compensatory damages. The Plaintiffs argue that the Trial Court erred in failing to include in their award taxes they paid on purported "dividends" from their investment and interest on loans incurred by them to invest the loan proceeds in the Ponzi scheme. Defendant argues only that the Trial Court had possession of all the pertinent information and made its calculation, which should not be disturbed absent a preponderance of the evidence showing that the damages awarded were incorrect.

As pointed out by the Plaintiffs, Defendant has not challenged the Plaintiffs' asserted figure for overall damages. The figures for taxes and interest incurred are established and undisputed in the record. Defendant has pointed to nothing to contradict the

Plaintiffs' calculation of damages except to note that the Trial Court had access to these figures below and nevertheless declined to include them in the Plaintiffs' award of damages. The taxes and interest incurred by the Plaintiffs were directly related to and resulted from the fraudulent Ponzi scheme. In our view, the interest and taxes incurred by the Plaintiffs as part of the Ponzi scheme should be included in their award of compensatory damages. We therefore modify the Trial Court's award to the Plaintiffs by increasing the award of Plaintiffs' "net loss of $1,033,081.73" to $1,366,949.92. The judgment of the Trial Court is affirmed as so modified.

## Conclusion

The judgment of the Trial Court is affirmed as modified, and this case is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed equally against the Appellants, Bradley M. Barkhurst and Judith R. Barkhurst, and their surety, if any, and the Appellee, Amparo Goyes Jarosh, personal representative of the estate of Charles D. Candler.

_____
D. MICHAEL SWINEY, JUDGE