IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| RICKY SHOKER, | ) | No. 80478-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MCCANN and JANE DOE, | ) | |
| husband and wife and the marital | ) | |
| community composed thereof; | ) | |
| SHUTTLE EXPRESS INC., a company | ) | |
| doing business in the State of | ) | |
| Washington; and JOHN DOES 1 | ) | |
| through X, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | UNPUBLISHED OPINION |
| PAVAN LAIL, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |

VERELLEN, J. — When a driver is "suddenly stricken" by an "unforeseen loss" of consciousness" the driver is not liable for negligence. But when a driver is aware he is suffering from some form of impairment and fails to pull over, there are questions whether any ultimate loss of consciousness was foreseeable.

A driver struck a pedestrian who was walking on a sidewalk near the southeast corner of Fifth Avenue and Pine Street in downtown Seattle. The driver asserted he was not liable because he experienced a "sudden loss of

consciousness."  But the evidence submitted by the driver and the pedestrian on cross motions for summary judgment, viewed in a light most favorable to the pedestrian, established that there were genuine issues of material fact as to when and why the driver lost consciousness.

Therefore, we reverse the trial court's order granting the driver's motion for summary judgment and remand for further proceedings.  We also affirm the trial court's order denying the pedestrian's motion for partial summary judgment.

FACTS

On December 28, 2017, Robert McCann, a driver for Shuttle Express Inc., picked up Margaret Fox from a hotel on Fifth Avenue.  McCann, with Fox as his sole passenger, continued driving south on Fifth Avenue in the far left lane.

After McCann drove through the intersection at Fifth Avenue and Olive Way, he felt a "blood-rushing" sensation and "lost awareness immediately."[1] McCann next remembers being "up against the side of a building."[2]

But he has no recollection of continuing to drive a block past the intersection at Fifth and Olive, stopping at a red light at Fifth and Pine Street, and accelerating when the light turned green.  McCann drove across the sidewalk at that intersection's northeast corner, through the crosswalk, back onto the sidewalk at the southeast corner, and into multiple pedestrians, including Ricky Shoker. The vehicle came to rest when it hit the storefront wall of the Gap building.

---

[1] Clerk's Papers (CP) at 118-19.

[2] CP at 119.

2

Shoker and his wife, Pavan Lail, sued McCann and Shuttle Express Inc. for negligence, alleging theories of joint and several liability and vicarious liability.[3] The trial court dismissed Shuttle Express Inc. McCann argued that he was not liable because he experienced a sudden loss of consciousness.

Shoker filed a motion for partial summary judgment, arguing that the court should strike McCann's sudden loss of consciousness affirmative defense because there was not substantial evidence that McCann lost consciousness. McCann filed a cross motion for summary judgment, arguing he could not be liable because substantial evidence established he experienced an unforeseen loss of consciousness.

In support of his affirmative defense, McCann provided declarations from three medical experts and Fox. In response, Shoker provided declarations from a medical expert, an accident reconstruction expert, the driver of the vehicle behind McCann, and another injured pedestrian. McCann and Shoker were also deposed. The trial court granted summary judgment for McCann, relying heavily on Fox's declaration that McCann "slumped over" when he entered the Fifth and Pine intersection.

Shoker appeals the order denying his motion for partial summary judgment and the order granting McCann's motion for summary judgment.

---

[3] Shoker filed an amended complaint on January 25, 2019, adding a claim against McCann for loss of consortium.

ANALYSIS

Shoker contends that the trial court improperly granted summary judgment in favor of McCann because there were genuine issues of material fact as to if, when, and why McCann lost consciousness.

We review an order granting summary judgment de novo.[4] Summary judgment is appropriate "'only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'"[5] We view the evidence in the "light most favorable to the nonmoving party."[6] If the party asserting the affirmative defense upholds his burden of production and is entitled to judgment as a matter of law, he will not be liable unless the nonmoving party sets "forth specific facts showing that there was a genuine issue [of material fact] for trial on the affirmative defense."[7] We will affirm summary judgment "only if, from all the evidence, reasonable persons could reach but one conclusion."[8]

McCann does not argue that he was not negligent, and, instead, contends that he cannot be liable for negligence because he was suddenly stricken by an unforeseeable loss of consciousness. Thus, the core issue is whether a defendant

---

[4] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012).

[5] Bavand v. OneWest Bank, 196 Wn. App. 813, 824-25, 385 P.3d 233 (2016) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)).

[6] Loeffelholz, 175 Wn.2d at 271.

[7] C.L. v. State Dep't of Soc. & Health Servs., 200 Wn. App. 189, 203-04, 402 P.3d 346 (2017).

[8] Petcu v. State, 121 Wn. App. 36, 55, 86 P.3d 1234 (2004).

can succeed on summary judgment asserting the sudden loss of consciousness affirmative defense when the point at which the defendant became unconscious is disputed and there is no explanation for why the defendant's unconsciousness occurred.

A "'driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence.'"[9]  The Restatement (Third) of Torts: Liability for Physical and Emotional Harm explains:

> Sudden incapacitation can be caused by a heart attack, a stroke, an epileptic seizure, diabetes, or other medical conditions.  A typical case is sudden incapacitation that causes a driver to lose control of the car.  This is distinctly dangerous and substandard driving which, absent incapacitation, would easily merit a finding of negligence.[10]

This affirmative defense requires the party asserting it to prove by a preponderance of the evidence that the driver could not have foreseen his loss of consciousness.[11]  "Whether the reasonable-foreseeability standard is satisfied . . . depends on what information was available to the actor indicating that at some uncertain point in the future the actor might suffer an instance of incapacitation."[12]

---

[9] Courtright v. Youngberg, 4 Wn. App. 234 n.2, 480 P.2d 522 (1971) (quoting Kaiser v. Suburban Transp. Sys., 65 Wn.2d 461, 466, 398 P.2d 14 (1965)).

[10] RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 11 cmt. d (2010).

[11] Braatz v. Braatz, 2 Wn. App. 2d 889, 898, 413 P.3d 612 (2018) (preponderance of the evidence standard applies to affirmative defenses in civil matters) (citing Dep't of Labor & Indus. v. Rowley, 185 Wn.2d 186, 208-09, 378 P.3d 139 (2016)).

[12] RESTATEMENT § 11 cmt. d.  Evidence bearing on foreseeability includes: "the number and frequency of episodes of incapacitation in the past; the

"If an actor has information indicating that an incident of incapacitation may be imminent or is likely to occur in the immediate future," the actor will be unable to establish that his loss of consciousness was not foreseeable.[13]  Foreseeability of loss of consciousness generally is a question of fact for the jury.[14]

Whether McCann's loss of consciousness was "sudden" and "foreseeable" depends on when and why he lost consciousness.

Here, there are genuine issues of material fact as to when McCann lost consciousness.  Specifically, McCann stated that the "last thing" he remembered was driving through "the intersection at [Fifth Avenue and] Olive Way," then he experienced a "blood-rushing" sensation and "lost awareness immediately."[15]  He

---

circumstances of those episodes, insofar as those circumstances bear on the likelihood of a reoccurrence; the extent to which medical treatment the actor is receiving can be expected to control the underlying medical problem; and whatever advice the actor's physician has provided."  RESTATEMENT § 11 cmt. d.

[13] RESTATEMENT § 11 cmt. d.

[14] RESTATEMENT § 11 cmt. d.  "In the assessment of reasonable foreseeability, a principal issue to be considered by the jury is whether the prospect of incapacitation is sufficiently foreseeable as to render the actor negligent for choosing to engage in a potentially dangerous activity such as driving."  RESTATEMENT § 11 cmt. d.

[15] CP at 54.  At oral argument, McCann's counsel asserted that McCann was uncertain exactly where he was when he "lost awareness."  But the record on appeal establishes that McCann recalls driving through the intersection at Fifth and Olive and that he has no recollection "of driving from the intersection of Olive way to the traffic light at Pine Street" or "of being stopped at the red light."  CP at 52.  Therefore, the only uncertainty is exactly where in the block between Olive and Pine McCann "lost awareness immediately."  CP at 52-54.  McCann also stated that he experienced two other similar incidents.  In the first incident, McCann had the flu, took a shower and felt a "tunneling" sensation.  CP at 129.  And in the second incident, he slammed his finger in a car door and when he washed it off the "edges were starting to turn grey."  CP at 129.  Upon

6

said he had no "specific recollection" of driving from the intersection of Olive Way to the traffic light at Pine Street and did not remember being stopped at a red light.[16] But Fox, McCann's sole passenger, recalled that they were stopped at the red light at the intersection of Fifth Avenue and Pine, and it was not until the vehicle "had just begun to move forward again for the green light" that she saw McCann's "head dip down" and he "sort of slumped over."[17] She said she then "braced" herself and closed her eyes.[18]

Jeffrey Guptill, the driver of the vehicle behind McCann's, stated that McCann was already stopped on Fifth Avenue approaching Pine Street and did not begin to move forward until the light turned green. When the light turned green, McCann "accelerated at normal pace."[19] Based on security camera footage, Darrin Richards, the accident reconstruction expert, determined that McCann's vehicle "was the 4th vehicle back from the intersection of Pine Street."[20] He explained that five seconds before McCann struck Shoker, the vehicle "was initially traveling at 9.9 [miles per hour (mph)]. It gradually increased to 18.6 mph

---

examination, his doctor referred to these two events as "provoked" syncopes. CP at 166.

[16] CP at 52. McCann also testified that the last thing he remembered "was going through Stewart and Olive." CP at 51.

[17] CP at 153.

[18] CP at 153.

[19] CP at 199.

[20] CP at 203.

before decreasing to 17.4 mph just before impact at the Gap Building."[21] Jarred Lee, another injured pedestrian, recalled that "[s]ix to ten seconds elapsed from the time [the vehicle struck him at the southeast corner of Fifth and Pine] as it passed until [he] was at the front of [the vehicle] looking at the driver. The driver's eyes were open but appeared somewhat dazed."[22]

The above testimony supports the existence of genuine issues of material fact about when any lack of consciousness occurred. If McCann suffered a sudden loss of consciousness immediately after crossing Fifth and Olive, that would be inconsistent with his ability to drive a block, slow to stop for a red light, and then accelerate at a normal pace when the light turned green. If he lost consciousness only upon entering the intersection of Fifth and Pine, when Fox observed McCann's "head dip down" and he "slumped over," that leaves unexplained his lack of memory of slowing, stopping, and accelerating at the light. This tension in the evidence, when viewed in a light most favorable to Shoker, suggests unresolved questions of fact about the timing of any unconsciousness.

There are also genuine issues of material fact as to why McCann lost consciousness. Dr. Gandis Mazeika, a sleep doctor, opined that McCann suffered from "mild sleep apnea" but stated that McCann's "mild obstructive sleep apnea is

---

[21] CP at 203. During this time, "the [gas] pedal was modulated [as a percentage of full throttle] by 15% up to 27% and finally down to 0% just before impact with the GAP building." CP at 233. "In half second intervals the gas pedal position was 15%, 21%, 18%, 27%, 21%, 24%, 24%, 24%,6% and 0%." CP at 233.

[22] CP at 197.

not associated with daytime drowsiness."[23] As a result, she concluded that "[t]he objective and subjective evidence indicates that [McCann] suffered a sudden and unexpected loss of consciousness."[24] Dr. Simeon Rubenstein, a cardiologist, concluded that "there was no cardiac related cause" for McCann's loss of consciousness and that he suffered from a "syncope episode."[25] And Dr. Kevin Kolostyak, a neurologist, found that McCann's "arachnoid cyst did not cause [his] syncope episode."[26]

But Shoker's medical expert, Dr. Harold Rappaport, a psychiatrist and neurologist, stated, "There remains no medical explanation for this sudden loss of consciousness in a person who is awake, alert, feeling well with no evidence for, seizures, syncope, ischemic attack/stroke or other likely ideology."[27] He reasoned that "Fox did not note any presyncopal symptoms such as light-headedness, dizziness, nausea etc. that would have preceded a syncopal event making this an

---

[23] CP at 158.

[24] CP at 158. Dr. Mazeika did not personally examine McCann; rather, she relied on the preaccident and postaccident reports in her opinion.

[25] CP at 165. McCann's doctors concluded that he suffered from an idiopathic syncope. "Idiopathic" is defined as "peculiar to the individual" and "arising spontaneously or from an obscure or unknown cause." WEBSTER'S THIRD NEW INT'L DICTIONARY 1123 (3rd ed. 2002).

[26] CP at 177.

[27] CP at 195.

unlikely scenario."[28]  He concluded, "It seems just as plausible that [McCann] did not lose consciousness."[29]

Dr. Rappaport's declaration is inconsistent with Dr. Mazeika's conclusion that McCann suddenly became unconscious with no forewarning of an impairment. When viewed in a light most favorable to Shoker, there is a reasonable inference that McCann consciously suffered some form of impairment immediately after Fifth and Olive, continued to drive for a block before stopping at a red light, and then accelerating when the light turned green.  Even if McCann suddenly became unconscious after he accelerated as Fox's statement suggests, there is a reasonable inference he was aware of an impairment for several seconds before colliding with Shoker and did not pull over.

McCann does not establish as a matter of law that he had no basis to foresee that he would suddenly suffer a complete loss of consciousness.

Shoker also contends the trial court erred in denying his motion for partial summary judgment.  Shoker argues that the present case is analogous to Courtright v. Youngberg because McCann's sudden loss of consciousness was based upon "pure speculation."[30]

In Courtright, a driver drove through a flashing red light and hit the plaintiffs' vehicle.[31]  The driver did not remember what happened and was uncertain

---

[28] CP at 189.

[29] CP at 86.

[30] 4 Wn. App. 234, 236, 480 P.2d 522 (1971).

[31] Id. at 235.

whether he lost consciousness.[32]  And there were no witnesses whose observations were consistent with the driver's loss of consciousness.[33]  The appellate court held that the driver's evidence of sudden loss of consciousness was insufficient to warrant an instruction on the affirmative defense because the evidence presented established only a "possibility that the failure to recall what happened was due to a loss of consciousness."[34]

But unlike the driver in Courtright, McCann provided more information about the circumstances surrounding his loss of consciousness, including Fox's statement.  Viewed in a light most favorable to McCann, and consistent with the trial court's observations, Fox's testimony that McCann "slumped over" when entering the Fifth and Pine intersection, together with all the other circumstances, could support a reasonable inference that he experienced a sudden loss of consciousness.[35]  Partial summary judgment in favor of Shoker is not warranted.

---

[32] Id. at 236.

[33] Id.

[34] Id. at 236-37.

[35] And the cases relied on by Shoker are not apt.  See Hayes v. Gill, 216 Tenn. 39, 46, 390 S.W.2d 213 (1965) (holding the fact that the driver was "slumped over" the wheel of the vehicle, without more, was insufficient to establish a sudden loss of consciousness); Reynolds v. Lewis, 419 F. Supp. 426, 429 (E.D. Tenn. 1976) (finding that the driver's "dizzy spells" coupled with the driver's inability to explain what happened was insufficient to establish a sudden loss of consciousness); Brannon v. Shelter Mut. Ins. Co., 507 So.2d 194, 197 (La. 1987) (holding that a sole witness's testimony that the driver was "slumped over" the wheel was insufficient to establish a sudden loss of consciousness because the witness could not see the driver from where she was seated, and the two other passengers did not corroborate her account that the driver was unconscious).

Because there are genuine issues of material fact about McCann's affirmative defense, summary judgment in favor of McCann is not warranted.

Therefore, we affirm in part, reverse in part, and remand for further proceedings.

WE CONCUR: